Fred N. Knopf (FNK4625)
Ami Shah (AS7812)
Wilson Elser Moskowitz Edelman & Dicker LLP
3 Gannett Drive
White Plains, New York 10604
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

THE UNITED STATES LIFE INSURANCE COMPANY :
IN THE CITY OF NEW YORK,                                                      Case No.  08 Civ. 1482

                                                                          :

                          Plaintiff,

                                                                          :   Hon. Sidney H. Stein

                    v.
                                                                          :

JORGE LUIS SANTANA, executor for Estate of MARIA
CORCINO PENA, and FRANCISCO ANTONIO GOMEZ,:

                          Defendants.                              :

                                                                          :

-------------------------------------------------------------------- X

## ATTORNEY DECLARATION IN SUPPORT OF THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK'S <u>MOTION FOR DEFAULT JUDGMENT</u>

I, **AMI SHAH**, an attorney admitted to practice law in the United States District Court for the

Southern District of New York, declares:

1.        I am associated with the law firm of Wilson, Elser, Moskowitz, Edelman & Dicker,

LLP, attorneys for the Plaintiff, The United States Life Insurance Company in the City of New York

("U.S. Life"), and as such, I am fully familiar with the facts and circumstances surrounding this

matter based upon the records maintained in said office and in the course of the defense thereof.

-1-

2.      This declaration is respectfully submitted on behalf of US Life, in support of its motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55.2 for the United States District Courts for the Southern and Eastern District of New York.

3.      This is an action seeking a Declaratory Judgment against Defendants, Jorge Luis Santana, executor for Estate of Maria Corcino Pena ("Santana"), and Francisco Antonio Gomez ("Gomez") stating that benefits under the Policy are not payable because there is no due proof of death. Furthermore, US Life believes that payment under the Policy has not been triggered because there is no due proof of death.

4.      On April 30, 2008, US Life served a Complaint for Declaratory Judgment on Jorge Luis Santana, executor for Estate of Maria Corcino. (A copy of the Summons and Complaint is attached as **Exhibit "A"**).

5.      An affidavit of service, attached as **Exhibit "B",** demonstrates that proper service was made by personal service upon Santana.

6.      Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A), Santana, was required to serve his answer within twenty (20) days after the service of the Summons and Complaint.

7.      Despite proper service of the Summons and Complaint upon Santana, he has failed to appear or interpose an answer in the action.

2042237.1

8.    Additionally, Plaintiff US Life served a Summons and Complaint upon Defendant Gomez through his attorney Luisa Ines Almanzar, on April 30, 2008. (A copy of the Summons is attached hereto as **Exhibit "C"**).

9.    An affidavit of service, attached as **Exhibit "D",** demonstrates that proper service was made by personal service upon Luisa Ines Almanzar.

10.    Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A), Gomez, was required to serve his answer within twenty (20) days after the service of the Summons and Complaint.

11.    Despite proper service of the Summons and Complaint upon Gomez, he has failed to appear or interpose an answer in the action.

12.    The Defendants are not infants, in the military, or incompetent persons.

13.    The Plaintiff has obtained a Clerk's Certificate for Default, which is annexed as **Exhibit "E"**.

14.    Accordingly, pursuant to Federal Rule of Civil Procedure 55 (b)(2) and Local Rule 55.2 for the United States District Courts for the Southern and Eastern District of New York, US Life seeks a Default Judgment because: (1) the parties against whom a notation of default is sought are not infants, in the military, or incompetent persons; (2) the parties have failed to plead or otherwise defend the actions; and (3) the pleadings to which no response has been made was properly served.

15.    No application for the relief sought herein has been made in this or any other court.

2042237.1

**WHEREFORE**, US Life respectfully requests that the Court execute the Proposed Default

Judgment, which has been attached as **Exhibit "F"**.

Dated:      White Plains, New York
            July 9, 2008

_____
Ami Shah

2042237.1

# AFFIDAVIT OF SERVICE

*UNITED STATES DISTRICT COURT / SOUTHERN DISTRICT OF NEW YORK*

*Index No. 08-CIV-1482*

*THE UNITED STATES LIFE INSURANCE COMPANY
IN THE CITY OF NEW YORK,*
                              *Plaintiff,*

        *-against-*

*JORGE LUIS SANTANA, executor for Estate of MARIA
CORCINO PENA and FRANCISCO ANTONIO GOMEZ,*
                              *Defendants.*

State Of New York, County of New York SS.:
**JOLANTYNA CAGNEY**
Being duly sworn, deposes and says that she is over the age of 18 years, is not a party to this action and resides in New York.

That on the **4**TH day of **MARCH 2008**, At: **8:53 PM**

At: **1309 91**ST **STREET, NORTH BERGEN, NEW JERSEY 07047**

Deponent served the Annexed: **WAIVER OF SERVICE OF SUMMONS  (NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS), COMPLAINT FOR DECLARATORY JUDGMENT**

Upon: **JORGE L. SANTANA**

## PERSONAL SERVICE ON AN INDIVIDUAL

An individual, by delivering thereat a true copy to **JORGE L. SANTANA** personally; deponent asked the person spoken to if he was the named defendant, and he replied in the affirmative. Upon this information and belief, deponent knew that the person spoken to was the named defendant: **JORGE L. SANTANA**

**DESCRIPTION** - Deponent describes the individual served or spoken to as follows:
  Sex: **MALE** Color: **BROWN** Hair: **BLACK** App. Age: **48** App. Ht: **5'10"** App. Wt.**230**
Other identifying features:

Sworn to before me this 5TH
day of MARCH 2008

MICHAEL PEREZ
Notary Public, State of New York
No. 01PE6065326
Qualified in Queens County
Commission Expires Oct. 15, 20__

JOLANTYNA CAGNEY 116-9105

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |
|---|---|---|

THE UNITED STATES LIFE INSURANCE
COMPANY IN THE STATE OF NEW YORK,

V.

JORGE LUIS SANTANA, executor for Estate of
MARIA CORCINO PENA, and FRANCISCO
ANTONIO GOMEZ,

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER:

## 08 CIV. 1482

## JUDGE STEIN

TO: (Name and address of Defendant)

Francisco Antonio Gomez, c/o Luisa Ines Almanxar G.,
Plaza Jiminian, Modulo 210* 2do nivel
c/Juan Rodiquez, Esq. Colon, La Vega, Rep. Dominicana

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Fred N. Knopf and Ami Shah
Wilson Elser Moskowitz Edelman & Dicker LLP
3 Gannett Drive, White Plains, NY 10604

an answer to the complaint which is served on you with this summons, within _____20_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

FEB 1 3 2008

J. Michael McMahon

CLERK

CLERK *James*

(By) DEPUTY CLERK

DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
   discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____   _____
              Date               *Signature of Server*

                       _____
                       *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.


```
Dominican Republic           )
National District            )
Santo Domingo                )    ss:
Embassy of the United States )
   of America                )
```

I certify that on this day the individual(s) named below
appeared before me and, being duly sworn, made the
statements set forth in the attached instrument.

Hancel Wendy Diaz Sanchez
(Typed Name(s) of Affiant(s))

(Signature of Consular Officer)

KARAN E. SWANER
Vice Consul
_____
(Typed Name of Consular Officer)

Vice Consul of the United States of America

1 3 MAYO 2008
_____
(Date)

[Seal]

AFFIDAVIT

Court:        UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF NEW YORK

In re:        THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY
              OF NEW YORK, Plaintiff,
              v.

              JORGE LUIS SANTANA, et al., Defendants

Index No.: 08-CV-1482

The Dominican Republic    )
                          ) ss.
City of Santo Domingo     )

I declare that I, **HANCEL WENDY DIAZ SANCHEZ**, Dominican citizen, identification no. 001-0945495-9, am an attorney licensed to practice law in the Dominican Republic, over the age of twenty-one, not a party nor an attorney for any party in this action, and state the following:

Service upon **Francisco Antonio Gomez**, was accomplished by personally delivering the Summons, Waiver of Service of Summons, Rule 7.1 Statement, Complaint for Declaratory Judgment, with Exhibits, bearing Index No. 08-CV-1482, personally and in person to Francisco Antonio Gomez by leaving with: LUISA INES ALMANZAR, who is attorney to Mr. Francisco Antonio Gomez, At the address of: Plaza Jiminian, Modulo 210, calle Juan Rodriguez esq. Colon, city of La Vega, Dominican Republic, on the thirtieth (30th ) day of April, two thousand and eight (2008) at four o'clock in the afternoon (4:00 pm)

**Description of person receiving documents:**

Race: Latin; Hair color: Black; Height: 5`2; Weight: 130 lbs.; Gender Female; Age: around 35.

Signature of Server _____

SUBSCRIBED AND SWORN to before me this _____ day of _____, 2008.

_____
Notary

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

THE UNITED STATES LIFE INSURANCE COMPANY
IN THE CITY OF NEW YORK,

                       Plaintiff,

                v.

JORGE LUIS SANTANA, executor for Estate of MARIA
CORCINO PENA, and FRANCISCO ANTONIO GOMEZ,
                       Defendants.

------------------------------------------------------------------------X

Case No.  08-CV-1482

**CLERK'S CERTIFICATE**

      I, J. MICHAEL MCMAHON, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action commenced on February 13, 2008 with the filing of a summons and complaint, a copy of the summons and complaint was served on defendant Francisco Antonio Gomez by personally serving Luisa Ines Almanzar, attorney to defendant Gomez, on April 30, 2008 and proof of such service was filed on May 28, 2008; and on defendant Jorge Luis Santana, executor for Estate of Maria Corcino Pena, by personal service, on March 4, 2008 and proof of such service was filed on May 21, 2008.

      I further certify that the docket entries indicate that the defendants have not filed an answer or otherwise moved with respect to the complaint herein. The default of the defendants is hereby noted.

Dated: New York, New York

      JuLY 8, 2008

                       J. MICHAEL MCMAHON
                       Clerk of the Court

             By: _____
                    Deputy Clerk

-1-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

THE UNITED STATES LIFE INSURANCE
COMPANY IN THE CITY OF NEW
YORK,                                        Plaintiff,

-v-

JORGE LUIS SANTANA, executor for Estate
of MARIA CORCINO PENA, and
FRANCISCO ANTONIO GOMEZ,       Defendant.

---

Case No._____

Rule 7.1 Statement

JUDGE STEIN

08 CIV. 1482

---

    Pursuant to Federal Rule of Civil Procedure 7.1 [formerly Local General Rule 1.9] and to enable District Judges and Magistrate Judges of the Court to evaluate possible disqualification or recusal, the undersigned counsel for _____ (a private non-governmental party)

The ~~United States Life Insurance Company in~~ the City of New York certifies that the following are corporate parents, affiliates and/or subsidiaries of said party, which are publicly held.

**Date:**    February 11, 2008 _____

_____
**Signature of Attorney**

**Attorney Bar Code:** FNK 4625 _____

✎AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ Southern _____ District of _____ New York _____

THE UNITED STATES LIFE INSURANCE
COMPANY IN THE STATE OF NEW YORK,

V.

JORGE LUIS SANTANA, executor for Estate of
MARIA CORCINO PENA, and FRANCISCO
ANTONIO GOMEZ,

## SUMMONS IN A CIVIL ACTION

CASE NUMBER:

## 08 CIV. 1482

## JUDGE STEIN

TO: (Name and address of Defendant)

> Jorge L. Santana
> 1309 91st Street
> North Bergen, NJ 07047-4420

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

> Fred N. Knopf and Ami Shah
> Wilson Elser Moskowitz Edelman & Dicker LLP
> 3 Gannett Drive, White Plains, NY 10604

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

FEB 1 3 2008

## J. MICHAEL McMAHON

_____
CLERK

_____
(By) DEPUTY CLERK

_____
DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                        Date                              *Signature of Server*

                                            _____
                                                 *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Fred N. Knopf (FNK4625)
Ami Shah (AS7812)
Wilson Elser Moskowitz Edelman & Dicker LLP
3 Gannett Drive
White Plains, New York 10604
Attorneys for Plaintiff



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
THE UNITED STATES LIFE INSURANCE COMPANY :
IN THE CITY OF NEW YORK,                                          Case No.

            Plaintiff,        : **08 CIV. 1482**

         v.                       :

JORGE LUIS SANTANA, executor for Estate of MARIA
CORCINO PENA, and FRANCISCO ANTONIO GOMEZ,: **JUDGE STEIN**

           Defendants.       :

                                   :
------------------------------------------------------------------ X

## THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK'S COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, The United States Life Insurance Company in the City of New York ("U.S. Life"), by its attorneys, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP files this Complaint for Declaratory Judgment against Defendants, Jorge Luis Santana, executor for Estate of Maria Corcino Pena, and Francisco Antonio Gomez (collectively, "Defendants") and allege upon information and belief:

1340425.1

## JURISDICTION

1.    This Court possesses jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), diversity between citizens of different states and the amount in controversy exceeds $75,000.00, which involves a claim for declaratory relief pursuant to the Declaratory Judgment Act (28 U.S.C. §§ 2201-2202) and Rule 57, Fed. R. Civ. P. for a declaration that Plaintiff is not liable to pay death benefit proceeds under policy UHO6222ONL (the "Policy") on the basis that there has been no due proof of death of the insured, Maria Corcino Pena.  A true and accurate copy of the Contract is attached as Exhibit "A."

2.    This action is currently ripe for adjudication.

## VENUE

3.    Venue is proper in this case pursuant to 28 U.S.C. § 1391(a) because the corporate plaintiff does business in and is subject to personal jurisdiction in this District, and a substantial part of the events giving rise to this claim took place within this District.

4.    Plaintiff's principal place of business is located in New York.  Plaintiff does business in this District and negotiated the insurance policy which is the subject of this Complaint.  Plaintiff may be served with process through its office and agent located at 830 Third Avenue, 7th Floor, New York, New York 10022.

5.    Jorge Luis Santana ("Santana"), the Executor for the Estate of Maria Corcino Pena, resides at 154 Madison Avenue, Perth Amboy, New Jersey, 08861.

-2-

1340425.1

6.    Francisco Antonio Gomez ("Gomez"), the Primary Beneficiary and step-father, resides at c/o Luisa Ines Almanxar G, Plaza Siminian, Modulo 218# 2do nivel c/Juan Rodiguez esq colon, La Vega, Rep Dominicana.

## POLICY

7.    On or about May 7, 2004, Maria Corcino Pena ("Pena") executed a U.S. Life Application for life insurance. See Exhibit B. The specific product to be purchased was the Medalist Premier Flexible Premium Adjustable Life Insurance Policy and the amount of life insurance sought was $500,000.  Pena was listed as the proposed insured.

8.    Pena listed Francisco Antonio Gomez, her alleged step father, as her primary beneficiary. Upon Pena's death, Gomez would receive 100% of the death benefit proceeds.

9.    Pena also listed Jorge Luis Santana as a primary beneficiary, but according to the Application, he was not entitled to the death benefit proceeds.

10.    As part of the application process, Pena answered detailed questions necessary for underwriting the Policy, including questions about her age, citizenship, net worth, income and life insurance in force or pending.

11.    Pena attested to the truth and completeness of the representations made during the application process as evidenced by her signature under the "Statements and Signature" section.

12.    The Statement of the Proposed Insured(s) states,

> I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and relief, I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or

-3-

deny a claim or void the policy: (1) it is within it contestable period; and (2) such misrepresentation materially affects the acceptance of the risk.

13.    As a result of the Application submitted by Pena, and in reliance upon the truthfulness and accuracy of the information provided therein, on June 4, 2004, U.S. Life issued policy number UHO6222ONL.

14.    U.S. Life sent Pena a Policy and Pena, as owner of the Policy, signed a Policy Delivery Receipt, acknowledging delivery of the Policy on August 7, 2004. See Exhibit C.

15.    According to the Contract, the relevant portion of section titled "Payment of Proceeds" states,

Proceeds will be payable and this policy will terminate upon the earliest of (1) the death of the insured, (2) the surrender of this policy, or (3) the maturity date.

The death benefit less debt will be paid to the beneficiary upon receipt of due proof of the death of the insured before the maturity date and proof of the claimant's interest in the proceeds.

16.    On August 7, 2004, U.S. Life received an executed Amendment of Application and Contract Acceptance Acknowledgement form. See Exhibit D. Pena executed the document acknowledging and accepting the terms of the Contract.

17.    On or about April 14, 2005, Gomez, the alleged step father, completed a Proof Death and Claimant's Statement documents and submitted that Pena died on April 2, 2005 from trauma. See Exhibit E.

1340425.1

18.     Since Pena died within the two year contestable period for the Contract, U.S. Life commenced a customary investigation in light of the fact that the death occurred during the contestability period (within two years of issuance) of the Policy.

19.     The investigation revealed a number of inconsistencies, including among other things, the authenticity of the information contained on the Death Claim form, the manner in which Pena allegedly died, the time of her death, her marital status, and her relationship with the primary beneficiary. Essentially, these inconsistencies revealed that the information provided regarding Pena's death was materially false and misleading and the primary beneficiary did not provide due proof of death. Based on these inconsistencies, U.S. Life is seeking a declaratory judgment declaring that U.S. is not obligated to pay the death benefit proceeds because due proof of death has not been provided.

## MATERIAL INCONSISTENCIES

20.     During U.S. Life's customary investigation, it was revealed that a couple of physicians provided conflicting information regarding Pena's injuries and treatment.

21.     U.S. Life first learned of Pena's death through her sister in law, Omaira Maldonado ("Maldonado"). When Maldonado was interviewed, she said that she received a call that Pena had an accident which resulted in a broken leg.

22.     Gomez said that he was never informed that Pena had a broken leg.

23.     The investigators interviewed Pena's husband, Luis M. Pena Minaya ("Minaya") on June 4, 2005 at his residence located at 154 Madison Avenue, Perth Amboy, New Jersey 08861. Minaya stated that on the date of Pena's death, he was told that Pena had been in an accident and was

at a clinic. Minaya went to the clinic, operated by Dr. Alejandro Grullon Lugo ("Dr. Grullon"). Around 10:00pm, Dr. Grullon told him that Pena was not going to survive and to take her home.

24. During this interview, Minaya said that he took Pena to Gomez' home in the Dominic Republic (D.R.) and she died around midnight. He said that no doctor was called after her death, and there was no police report and the police, EMS or ambulance were never called.

25.    Minaya said that on February 5, 2005, Pena's body was transported by pick-up truck to the La Torre Cemetery, La Vega, D.R. where she was allegedly buried, unembalmed. There was no church services.

26.    The investigators went to D.R. and interviewed Dr. Grullon. Contrary to Minaya's statements, Dr. Grullon stated that he personally treated Pena at the clinic during the morning of February 4, 2005. Dr. Grullon stated that she was released in an unconscious state, after two hours at the clinic.

27.    Due to these inconsistencies, investigators also inquired about Pena's alleged burial services and discovered that the casket for Pena's body was purchased and delivered by 5:00 pm on February 4, 2005 – at least 7 hours before Pena allegedly died.

28.    Additionally, the investigators went to locate the alleged death certificate. The investigators located a voided death certificate, # 7078, which was originally issued on February 14, 2005 and the cause of death was undetermined.

29.    The investigators also located another death certificate, #7078, which was allegedly issued after February 22, 2005 and the cause of death was multiple trauma and skull fracture.

-6-

30.     The medical examiner for La Vega, Dr. Felipe Susana, who entered the cause of death on each death certificate was interviewed. He stated that he never saw Pena's body and no one from his office conducted an autopsy. The medical examiner did not have any records to support the cause of the death and was unable to state how he obtained information to accurately state Pena's cause of death.

31.     Although Minaya and others interviewed state that Pena died on February 4, 2005, there are hospital records as of June 13, 2005 that show that Pena received outpatient treatment.

32.     Although Gomez is listed on the Application as Pena's stepfather, he has never had any legal custody.

33.     According to Minaya, Pena lived with Gomez until she arrived in the United States in the early 1990s.

34.     However, when Gomez was interviewed, he contradicted Minaya's statements and said that Pena only lived with him until 1974 and then left the D.R. and moved to Perth Amboy, New Jersey to live with her biological parents until she married Minaya.

35.     Given the various inconsistencies, the investigators interviewed additional people, including Gomez' brother, Francisco Gomez. Francisco Gomez stated that he has never heard of Pena.

36.     The investigators also uncovered that Pena was not a United States citizen as she claimed to be on the Application and had provided different birthdates and social security numbers to doctors in New Jersey.

37.    Pena also filed 2002 and 2003 tax returns where she reported that she was single, but Minaya said they were married for over 13 years.

38.    The investigators interviewed Pena's family members and were told that Pena never had any children. However, information obtained from a hospital in La Vega, D.R. stated that she had two childbirths.

39.    Due to these material inconsistencies surrounding Pena's treatment, circumstances causing her death, alleged burial and altered death certificates, U.S. Life is respectfully seeking a judgment stating that U.S. Life is not entitled to pay the death benefit proceeds to the Defendants because it has not received due proof of death.

## COUNT FOR DECLARATORY JUDGMENT

40.    U.S. Life incorporates paragraphs 1 - 39 by reference.

41.    An actual controversy exists between the parties as to whether U.S. Life is liable to the Defendants for benefits under the Policy. U.S. Life contends that Defendants are not entitled to the death benefit proceeds because of the material misrepresentations contained on the Death Claim form and the Defendants' failure to provide due proof of death.

42.    A declaratory judgment on whether U.S. Life is obligated to pay benefits under the Policy to Gomez or whether benefits under the Policy are payable at all will completely resolve the controversy among the parties.

43.    U.S. Life is entitled to judicial declaration that as a result of the material misstatements contained in the Death Claim forms and Defendants' failure to provide due proof of

-8-

1340425.1

death, the benefits under the Policy are not triggered because of Defendants' failure to provide due proof of death.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff U.S. Life respectfully requests an Order including or directing the following relief:

(a)     For a declaratory judgment stating that the benefits under the Policy are not payable because there is no due proof of death;

(b)     For a declaratory judgment stating that payment under the Policy has not been triggered because there is no due proof of death; and

(d)     For an award of U.S. Life's attorneys fees and costs incurred in this action; and

(c)     For such other relief the Court deems proper, just and equitable.

Dated:     White Plains, New York
            February 11, 2008

Respectfully submitted,

Wilson Elser Moskowitz Edelman & Dicker LLP

Fred N. Knopf (FNK4625)
Ami Shah (AS7812)
*Attorneys for Plaintiff U.S. Life*
3 Gannett Drive
White Plains, New York 10604
Our File No. 7478.219

-9-

# EXHIBIT A

# The United States Life Insurance Company in the City of New York

830 Third Avenue • 7th Floor • New York NY 10022

THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, A STOCK COMPANY (REFERRED TO IN THIS POLICY AS WE/US/OUR) WILL PAY THE BENEFITS OF THIS POLICY SUBJECT TO ITS PROVISIONS. THIS PAGE AND THE PAGES THAT FOLLOW ARE PART OF THIS POLICY.

SIGNED AT OUR HOME OFFICE AT 830 THIRD AVENUE, 7TH FLOOR, NEW YORK, NEW YORK 10022.

*Elizabeth M. Tuck*

Secretary

*David Diety*

President

RIGHT TO RETURN POLICY

THE OWNER MAY RETURN THIS POLICY TO US AT THE ABOVE ADDRESS OR TO THE AGENT FROM WHOM IT WAS PURCHASED WITHIN 30 DAYS AFTER RECEIPT. THIS POLICY WILL THEN BE CANCELLED AS OF ITS DATE OF ISSUE AND ANY PREMIUM PAID WILL BE REFUNDED.

NW                                                          27103001-1004-1100



TABLE OF CONTENTS

| PAGE | TITLE OF PROVISION |
|------|-------------------|
| 13 | ANNUAL REPORT |
| 13 | ASSIGNMENT |
| 10 | BASIS OF COMPUTATION |
| 12 | BENEFICIARY |
| 10 | CASH VALUE |
| 10 | CASH VALUE INTEREST RATES |
| 12 | CHANGE OF OWNER OR BENEFICIARY |
| 8 | CHANGES IN INSURANCE |
| 13 | CLAIMS OF CREDITORS |
| 13 | CONTRACT |
| 12 | CORRESPONDENCE |
| 11 | COST OF INSURANCE |
| 7 | DEATH BENEFIT |
| 12 | DEFERMENT |
| 7 | DEFINITIONS |
| 10 | GRACE PERIOD |
| 13 | ILLUSTRATION OF FUTURE BENEFITS AND VALUES |
| 7 | INCONTESTABILITY |
| 13 | MISSTATEMENT OF AGE OR SEX |
| 11 | MONTHLY DEDUCTION |
| 9 | NO-LAPSE PERIODS AND CONDITIONS |
| 7 | NONPARTICIPATING |
| 12 | OWNER |
| 7 | PAYMENT OF PROCEEDS |
| 11 | POLICY COST FACTORS |
| 12 | POLICY LOAN |
| 13 | POLICY SETTLEMENT |
| 2 | POLICY SPECIFICATIONS |
| 8 | PREMIUM PAYMENTS |
| 10 | REINSTATEMENT |
| 8 | RIDERS |
| COVER | RIGHT TO RETURN POLICY |
| 2 | SCHEDULE OF BENEFITS AND PREMIUMS |
| 3 | SCHEDULE OF POLICY CHARGES |
| 7 | SUICIDE |
| 11 | SURRENDER OF POLICY |
| 4 | TABLE OF APPLICABLE PERCENTAGES |
| NEXT TO LAST | TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES |
| 4 & 5 | TABLE OF SURRENDER CHARGES |
| 12 | WITHDRAWAL FROM CASH VALUE |

SEE SUPPLEMENTAL BENEFIT PAGES FOR RIDERS, IF ANY.

FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY WITH FLEXIBLE DEATH
BENEFIT AND CASH VALUE
PREMIUMS PAYABLE FOR LIFE OF INSURED UNTIL MATURITY DATE
DEATH BENEFIT PAYABLE AT DEATH OF INSURED PRIOR TO MATURITY DATE
CASH VALUE, LESS ANY DEBT, PAYABLE ON MATURITY DATE        ADJUSTABLE LIFE
                                                            NO DIVIDENDS

POLICY SPECIFICATIONS

INSURED        MARIA C PENA              UH062220NL    POLICY NUMBER

INITIAL SPECIFIED AMOUNT    $500,000     06/04/2004    DATE OF ISSUE

UNDERWRITING CLASS    STANDARD              04         MONTHLY DATE
                      TOBACCO

AGE AT ISSUE          42            06/04/2062    MATURITY DATE (END
                                                  OF COVERAGE DATE)*

SCHEDULE OF BENEFITS AND PREMIUMS                            PLANNED
                                      INITIAL    PLANNED    PREMIUM
BENEFITS                              PREMIUM    PREMIUM    INTERVAL

MEDALIST PREMIER   DEATH BENEFIT      $696.00    $696.00    QUARTERLY
                   (OPTION 1)
THE MONTHLY NO-LAPSE PREMIUM FOR THE INITIAL NO-LAPSE PERIOD IS $293.37.

LENGTH OF INITIAL NO-LAPSE PERIOD = 5 YEARS

*COVERAGE MAY EXPIRE BEFORE THE MATURITY DATE IF PLANNED PREMIUMS ARE NOT
PAID, IF PREMIUMS PAID ARE NOT ENOUGH TO CONTINUE COVERAGE TO SUCH DATE, IF
COVERAGE IS INCREASED OR DECREASED, OR IF THERE ARE ANY LOANS OR WITHDRAWALS
FROM THE CASH VALUE.  COVERAGE MAY ALSO BE AFFECTED BY CHANGES IN COST OF
INSURANCE RATES OR CASH VALUE INTEREST RATES.  THE ANNUAL REPORT SENT TO THE
OWNER WILL UPDATE THIS INFORMATION.

BASED ON THE GUARANTEED INTEREST RATE, GUARANTEED COST OF INSURANCE RATES
AND THE POLICY CHARGES, THE MAXIMUM PREMIUM REQUIRED TO KEEP THE POLICY IN
FORCE AT THE END OF THE NO-LAPSE PERIOD IS $11,862.35.   SUCH PREMIUM ASSUMES
THE INITIAL SPECIFIED AMOUNT REMAINS THE SAME, PAYMENT OF THE NO-LAPSE PREMIUM
AND NO LOANS OR WITHDRAWALS.

ASSUMING CURRENT INTEREST, MORTALITY AND EXPENSE FACTORS
CONTINUE INDEFINITELY, AND A PREMIUM EQUAL TO THE INITIAL PREMIUM IS
PAID ANNUALLY, THIS POLICY WILL PROVIDE COVERAGE FOR 0 YEARS; BASED
ON GUARANTEED INTEREST, MORTALITY AND EXPENSE FACTORS, THIS
POLICY WILL PROVIDE COVERAGE FOR 0 YEARS. OTHER POLICY FORMS
DESIGNED SPECIFICALLY TO PROVIDE TERM INSURANCE MAY OFFER SIMILAR
BENEFITS FOR SUCH PERIODS AT A LOWER COST OR WITH HIGHER CASH
SURRENDER VALUES. YOU SHOULD CONSIDER WHETHER THIS POLICY OR
SUCH ALTERNATIVE POLICY IS RIGHT FOR YOU.

DUPLICATE

GUARANTEED CASH VALUE INTEREST RATE = 4.0% PER YEAR, COMPOUNDED YEARLY

MONTHLY INTEREST FACTOR = 1.0032737

MINIMUM SPECIFIED AMOUNT = $50,000

PREFERRED LOAN PERIOD = THE ELEVENTH AND EACH LATER POLICY YEAR

PREFERRED LOAN LIMIT = 10% OF THE SURRENDER VALUE AT THE TIME A LOAN IS TAKEN

GUARANTEED ANNUAL RATE USED TO CREDIT INTEREST TO BORROWED AMOUNT OF CASH VALUE RESULTING FROM PREFERRED LOANS = 5.5%.

## SCHEDULE OF POLICY CHARGES

PREMIUM PAYMENT CHARGE = 6.0% OF EACH PREMIUM RECEIVED

POLICY FEE = $6.25 MONTHLY

SURRENDER CHARGE:  SEE TABLE OF SURRENDER CHARGES ON PAGES 4 AND 5

SURRENDER CHARGE FOR A SPECIFIED AMOUNT DECREASE = THE THEN CURRENT SURRENDER CHARGE MULTIPLIED BY THE PRODUCT OF (1) THE PERCENTAGE OF DECREASE IN THE SPECIFIED AMOUNT AND (2) THE POLICY YEAR FACTOR SHOWN BELOW.  THE CASH VALUE REMAINING AFTER A DECREASE IN THE SPECIFIED AMOUNT CANNOT BE LESS THAN TWO MONTHLY DEDUCTIONS.  EACH FUTURE SURRENDER CHARGE WILL BE REDUCED BY THE SAME PERCENTAGE  AS  THE SPECIFIED AMOUNT WAS DECREASED.

| POLICY YEAR OF DECREASE | POLICY YEAR FACTOR |
|---|---|
| 1 - 5 | 1.00 |
| 6 | 0.80 |
| 7 | 0.60 |
| 8 | 0.40 |
| 9 | 0.20 |
| 10 & LATER | 0.00 |

CHARGE FOR EACH WITHDRAWAL FROM THE CASH VALUE = THE LESSER OF 5% OF THE CASH VALUE BEING WITHDRAWN OR $25.00.  THIS CHARGE WILL NOT APPLY TO THE FIRST WITHDRAWAL IN EACH POLICY YEAR.

SERVICE CHARGE FOR ILLUSTRATION OF FUTURE BENEFITS AND  VALUES = $25.00.

LOAN INTEREST RATE = 6.0% PER YEAR, PAYABLE IN ARREARS.

TABLE OF APPLICABLE PERCENTAGES

| ATTAINED AGE | APPLICABLE PERCENTAGE | ATTAINED AGE | APPLICABLE PERCENTAGE | ATTAINED AGE | APPLICABLE PERCENTAGE |
|---|---|---|---|---|---|
| 42 | 236 | 55 | 150 | 68 | 117 |
| 43 | 229 | 56 | 146 | 69 | 116 |
| 44 | 222 | 57 | 142 | 70 | 115 |
| 45 | 215 | 58 | 138 | 71 | 113 |
| 46 | 209 | 59 | 134 | 72 | 111 |
| 47 | 203 | 60 | 130 | 73 | 109 |
| 48 | 197 | 61 | 128 | 74 | 107 |
| 49 | 191 | 62 | 126 | 75-90 | 105 |
| 50 | 185 | 63 | 124 | 91 | 104 |
| 51 | 178 | 64 | 122 | 92 | 103 |
| 52 | 171 | 65 | 120 | 93 | 102 |
| 53 | 164 | 66 | 119 | 94 | 101 |
| 54 | 157 | 67 | 118 | 95-99 | 100 |

TABLE OF SURRENDER CHARGES

IN THE TABLE ON THE NEXT PAGE, MO. REFERS TO THE CERTIFICATE MONTH SHOWN.

THE TABLE APPLIES TO THE INITIAL SPECIFIED AMOUNT. IF THE SPECIFIED AMOUNT IS INCREASED, WE WILL PROVIDE A NEW TABLE IN A SUPPLEMENTAL ENDORSEMENT. IF THE SPECIFIED AMOUNT DECREASED WHEN A POLICY SURRENDER CHARGE IS IN EFFFECT, WE WILL PROVIDE A NEW TABLE IN A SUPPLEMENTAL ENDORSEMENT.

A STATEMENT OF THE METHOD OF CACLULATING SURRENDER CHARGES HAS BEEN FILED WITH THE INSURANCE OFFICIAL OF THE STATE IN WHICH THIS POLICY IS DELIVERED.

(CONTINUED ON THE NEXT PAGE)

TABLE OF SURRENDER CHARGES (CONTINUED)

| MO. | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 |
|-----|------|------|------|------|------|------|------|------|------|------|
| JAN | | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 |
| FEB | | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 |
| MAR | | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 |
| APR | | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 |
| MAY | | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 |
| JUN | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 |
| JUL | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 |
| AUG | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 |
| SEP | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 |
| OCT | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 |
| NOV | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 |
| DEC | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 | 5942 |

| MO. | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 |
|-----|------|------|------|------|------|------|
| JAN | 5942 | 5249 | 4060 | 2872 | 1684 | 495 |
| FEB | 5942 | 5150 | 3961 | 2773 | 1585 | 396 |
| MAR | 5942 | 5051 | 3862 | 2674 | 1486 | 297 |
| APR | 5942 | 4952 | 3763 | 2575 | 1387 | 198 |
| MAY | 5942 | 4853 | 3664 | 2476 | 1287 | 99 |
| JUN | 5942 | 4754 | 3565 | 2377 | 1188 | |
| JUL | 5843 | 4655 | 3466 | 2278 | 1089 | |
| AUG | 5744 | 4556 | 3367 | 2179 | 990 | |
| SEP | 5645 | 4457 | 3268 | 2080 | 891 | |
| OCT | 5546 | 4357 | 3169 | 1981 | 792 | |
| NOV | 5447 | 4258 | 3070 | 1882 | 693 | |
| DEC | 5348 | 4159 | 2971 | 1783 | 594 | |

(THIS PAGE IS INTENTIONALLY LEFT BLANK.)

**DEFINITIONS**

**Age or attained age** means age nearest birthday at the beginning of a policy year.

**Policy months, policy years and monthly dates.** The first policy month and first policy year begin on the date of issue shown on page 2. Subsequent policy months and years begin on the same day of each subsequent calendar month and year, respectively. The monthly date shown on page 2 is the day of a calendar month on which a policy month begins.

**PAYMENT OF PROCEEDS**

Proceeds will be payable and this policy will terminate upon the earliest of (1) the death of the insured, (2) the surrender of this policy, or (3) the maturity date.

The death benefit less debt will be paid to the beneficiary upon receipt of due proof of the death of the insured before the maturity date and proof of the claimant's interest in the proceeds. If the insured dies during a grace period when a no-lapse period is in effect, the death benefit will be reduced by any unpaid monthly no-lapse premiums. If the insured dies during a grace period when a no-lapse period is not in effect, the death benefit will be reduced by any unpaid monthly deductions.

The surrender value will be paid to the owner if this policy is surrendered before the maturity date.

The cash value less debt will be paid to the owner if the insured is living on the maturity date.

**DEATH BENEFIT**

The death benefit at any time will be one of the following options chosen by the owner:

**Option 1.** The death benefit will be the greater of (a) the specified amount or (b) the corridor death benefit.

**Option 2.** The death benefit will be the greater of (a) the specified amount plus the cash value or (b) the corridor death benefit.

**Corridor death benefit.** The corridor death benefit is the applicable percentage of the cash value. The applicable percentage is based on the insured's attained age, as shown in the Table of Applicable Percentages on page 4.

**Qualification as life insurance.** This policy is intended by the owner to qualify as life insurance under the Internal Revenue Code. We reserve the right to increase the death benefit, if necessary, to maintain such qualification.

**SUICIDE**

In the event of the suicide of the insured, while sane or insane, within two years from the date of issue, our liability will be limited to the premiums paid less any debt and any withdrawals from the cash value.

In the event of the suicide of the insured, while sane or insane, within two years from the date of an increase in specified amount or within two years from the date of a change from death benefit option 1 to option 2, our liability will be limited to the death benefit that would have been payable had no such increase or change taken effect. We will refund any additional cost of insurance deductions resulting from such increase or change.

**INCONTESTABILITY**

We will not contest this policy after it has been in force during the lifetime of the insured for two years from the date of issue.

We will not contest a reinstatement after the reinstatement has been in force during the lifetime of the insured for two years from the date of reinstatement. If we contest a reinstatement, we will contest only statements made in the reinstatement application.

We will not contest an increase in specified amount or a change from death benefit option 1 to option 2 after such increase or change has been in force during the lifetime of the insured for two years from the date of such increase or change. If we successfully contest an increase in specified amount or a change in death benefit option, the death benefit will be what would have been payable if the increase or change had not taken effect.

**NONPARTICIPATING**

This policy does not pay dividends. Any change in cost of insurance rates or excess interest rates will take effect prospectively. We will not recoup prior losses, if any, by changing cost of insurance rates or excess interest rates.

**NO-LAPSE PERIODS AND CONDITIONS**

This policy will not lapse as long as its surrender value is large enough to cover each monthly deduction when due. Even if this condition is not met, this policy will not lapse during a no-lapse period if the applicable no-lapse condition is met.

The cash value at the end of the no-lapse period may be insufficient to keep the policy in force unless an additional payment is made at that time.

**Initial no-lapse period.** The initial no-lapse period starts on the date of issue. The length of the initial no-lapse period is shown on page 2.

**Initial no-lapse condition.** This policy will not lapse during the initial no-lapse period if the sum of the premiums that have been paid as of each monthly date is not less than (1) plus (2) plus (3) where:

(1) is the monthly no-lapse premium shown on page 2 times the number of monthly dates which have occurred, starting with the date of issue;

(2) is the amount of current debt; and

(3) is the amount of cash value withdrawn since the date of issue.

**New no-lapse period.** A new no-lapse period will start on a new no-lapse date and will supersede any existing no-lapse period. A new no-lapse date is a monthly date (a) on which coverage is increased, or (b) on which, during a no-lapse period, coverage is decreased. If coverage is increased, the length of the new no-lapse period will be the same as that of the initial no-lapse period. If, during a no-lapse period, coverage is decreased, the new no-lapse period will be equal to the remainder of the existing no-lapse period, starting with the new no-lapse date and ending with the expiry date of the existing no-lapse period.

If coverage is decreased when a no-lapse period is not in effect, there will be no new no-lapse period.

Any changes to the monthly no-lapse premium due to an increase or decrease in coverage will be shown in a supplemental endorsement.

Coverage is increased if:

1. this policy's specified amount is increased (unless such increase results from an automatic increase rider);

2. a new rider is added to this policy; or

3. coverage under an existing rider is increased.

Coverage is decreased if:

1. this policy's specified amount is decreased;

2. an existing rider is removed from this policy; or

3. coverage under an existing rider is decreased.

**New no-lapse condition.** This policy will not lapse during a new no-lapse period if the accumulated premiums that have been paid as of each monthly date since the new no-lapse date are not less than (1) plus (2) plus (3) minus (4) where:

(1) is the new monthly no-lapse premium, which we will provide at the start of the new no-lapse period, times the number of monthly dates which have occurred, starting with the new no-lapse date;

(2) is the amount of current debt;

(3) is the amount of cash value withdrawn since the new no-lapse date; and

(4) is the cash value on the new no-lapse date.

**Waiver of monthly deductions.** If we waive monthly deductions under a disability benefit rider attached to this policy, any existing no-lapse period will be suspended on the monthly date following the start of disability. Such no-lapse period will resume on the monthly date following the end of disability.

UL-93 70-9 7

## MONTHLY DEDUCTION

The monthly deduction is the sum of the cost of insurance for the policy month, the policy charge shown on page 3, and the cost of any riders for the policy month.

## COST OF INSURANCE

The cost of insurance is the sum of the products of

1. each amount at risk associated with the initial specified amount or with a later specified amount increase, and
2. its applicable cost of insurance rate.

**Amount at risk.** The amount at risk associated with the initial specified amount or with a later specified amount increase will equal:

1. for death benefit option 1, the adjusted specified amount less the allocable portion of the cash value; and
2. for death benefit option 2, the adjusted specified amount.

The adjusted specified amount will be the initial specified amount or later specified amount increase multiplied by the ratio of (1) to (2) where

(1) is the death benefit divided by the monthly interest factor shown on page 3, minus the cash value if death benefit option 2 is in effect; and

(2) is the specified amount.

For death benefit option 1, the cash value is allocated first to the adjusted initial specified amount. Any excess is then allocated to the adjusted specified amount associated with later increases, in the order such increases took effect. For death benefit option 2, the cash value is not allocated to any portion of the adjusted specified amount.

If a change in death benefit option has been made, the initial specified amount and each later specified amount increase will be modified to equal its associated amount at risk on the date of change. If the change is from option 2 to option 1, the cash value will be included in the modified initial specified amount, if it is greater than zero, otherwise in the earliest non-zero modified specified amount increase.

The amount at risk for this policy is the sum of the amounts at risk associated with the initial specified amount and later specified amount increases.

**Cost of insurance rates.** The monthly cost of insurance rates applicable to the amount at risk associated with the initial specified amount or with a later specified amount increase are based on the insured's sex, attained age, underwriting class and current death benefit, and the number of policy years that have elapsed since the date of issue or date of specified amount increase.

We may change cost of insurance rates as described in the Policy Cost Factors provision below. However, such rates will never be more than the guaranteed maximum cost of insurance rates. Any change in rates will apply to all insureds with the same benefits and provisions who have the same age at issue, date of issue, sex and underwriting class. We will not change rates for insurance already in force because of any change in the insured's health, occupation or avocation.

The guaranteed maximum cost of insurance rates are shown on the next to last page.

## POLICY COST FACTORS

We may change cost of insurance rates. Such change will be made by class and will be based on our future expectations of mortality, persistency and expenses. We may change excess interest rates. Such change will be based on our future expectations of investment earnings, expenses and market interest rates. Expenses include administrative expenses, maintenance expenses, federal taxes, premium taxes, other state and local taxes and assessments, and reinsurance costs. Any change in cost of insurance rates and excess interest rates will be determined according to the procedures and standards on file with the insurance department of the state in which this policy is delivered. We will not change the policy charges shown on page 3 of this policy.

## SURRENDER OF POLICY

The owner may, by written request, surrender this policy for its surrender value on any date while the insured is alive. The surrender value will equal the cash value less debt less any surrender charge, as shown in the Table of Surrender Charges on pages 4 and 5.

## ASSIGNMENT

No assignment of this policy will be binding on us until filed with us in writing and recorded by us. No assignment will affect any payment we made before we recorded the assignment. We will not be responsible for the validity of an assignment.

All rights of the owner and any revocable beneficiary are subject to the rights of any assignee on record with us.

## POLICY SETTLEMENT

In any settlement we may require the return of this policy.

## THE CONTRACT

This policy, including any riders and endorsements, the original application, and any supplemental applications and declarations, is the entire contract.

All statements in an application are representations and not warranties. No statement will be used to void this policy or to contest a claim unless it appears in an application or declaration which is attached to and made part of this policy.

This policy may not be changed, nor may any of our rights or requirements be waived, except in writing by one of our authorized officers.

## MISSTATEMENT OF AGE OR SEX

If the insured's age or sex has been misstated, we will adjust the death benefit to reflect the amount at risk that would have been provided by the most recent monthly deduction made and the most recent cost of insurance rate for the insured's correct age and sex.

## CLAIMS OF CREDITORS

All payments under this policy are exempt from the claims of creditors to the extent permitted by law.

## ANNUAL REPORT

We will send a report to the owner once each year. The report will show this policy's current benefits and values and the policy activity for the previous year.

## ILLUSTRATION OF FUTURE BENEFITS AND VALUES

Upon the owner's written request, we will provide, once a year without charge, an illustration of future benefits and values for this policy. However, if more than one such illustration is requested within a year, payment of the service charge then in effect will be required for such additional illustration. The service charge is shown on page 3.

**ENDORSEMENT**

The policy to which this endorsement is attached is amended as follows:

1. The word "sex" is deleted wherever it appears.

2. The following provisions are added.

**PAYMENT OPTIONS**

Proceeds of $5,000 or more may be paid under an option. When proceeds are placed under an option the payee will receive a settlement contract. The date of the contract will be the date the proceeds become payable. The owner may choose the option only while the insured is living. After the death of the insured the beneficiary may choose the option if proceeds are payable in one sum. Payment options for death proceeds must be chosen within six months after the insured's death. Payment options for other proceeds must be chosen within two months of the date they are payable. All elections must be filed with us in writing. Payments may be requested at 1, 3, 6 or 12 month intervals. Each payment must be at least $50. Each payee must be a living person receiving payments in his own right.

The interest rate for options 1, 2 and 3 will be declared by us each year. This rate will never be less than 3% per year. For options 1 and 3 any interest in excess of 3% will be used to increase payment amounts; for option 2 any excess interest will be used to lengthen the payment period.

For options 4, 5, 6 and 7 the payments will be based on rates set by us. These rates will be 3 1/2% less than the published rates in effect for immediate annuities on the date of the settlement contract. Payments under these rates will never be less than the amount according to the table on pages 3 and 4 of this endorsement.

**Option 1. Interest.**We will hold the proceeds on deposit. Interest will be paid while the payee is living. Sums of $500 or more may be withdrawn up to four times a year.

**Option 2. Specified Income.**We will pay a stated income amount until the proceeds, with interest on the unpaid balance, are used up. The income each year may not be less than 10% of the proceeds.

**Option 3. Income for Specified Period.**We will pay an income for a stated period, up to 30 years.

**Option 4. Life Income with Guaranteed Period.**We will pay an income for a guaranteed period and for the rest of the payee's life. The guaranteed period may be 10, 15 or 20 years. If the table on page 3 of this endorsement shows the same amount for different periods for the age at which payments start, we will pay the amount for the longest period for which it is shown.

**Option 5. Life Income without Guaranteed Period.**We will pay an income for the payee's lifetime. Payments will end at the death of the payee. However, if the payee dies within one year of the date of the settlement contract, payments will be continued to a contingent payee until 10 years from the date of the settlement contract.

**Option 6. Life Income with Installment Refund.**We will pay an income for a guaranteed period and for the rest of the payee's life. The guaranteed period is the period required for the sum of income payments to equal the proceeds applied.

**Option 7. Joint Life Income with 2/3 to Survivor.**We will pay an income while both payees are living. When one payee dies we will pay 2/3 of the income for the rest of the survivor's life. However, if one payee dies within one year from the date of the settlement contract, income will be paid to the survivor thereafter as if the survivor had chosen option 5 on the date of the settlement contract.

**Additional Option to Buy Single Premium Immediate Life Annuity at Reduced Rate.**If proceeds of at least $5,000 are applied under option 4, 5, 6 or 7, additional money may be used to buy a single premium immediate life annuity. The cost of this annuity will be 3 1/2% less than the then published rate. The monthly income from this annuity and option 4, 5, 6 or 7 may not exceed 3% of the death benefit in force on the date of issue of this policy. Written request must be made within 31 days from the date proceeds are payable.

**Payment Provisions.**The first payment under options 2, 3, 4, 5, 6 or 7 will be due as of the date of the settlement contract. The first payment under option 1 will be due at the end of the first interest period.

Payments under option 5 will end at the death of the payee. Payments under option 7 will end at the death of the surviving payee.

If any payments remain under options 1, 2, 3, 4 or 6 at the death of the payee, the amount stated below will be paid in one sum to the payee's executors or administrators, unless otherwise directed in the election of the option:

Option 1. Any amount left on deposit with accrued interest.

Option 2. The unpaid balance of proceeds with accured interest.

Options 3, 4 and 6. The commuted value, based on interest at 3% per year, of any future income payments for stated guaranteed period.

**Evidence of Age and Survival.**We may require due proof of age and continued survival of a payee under options 4, 5, 6 or 7.

**Special Agreements.**Policy proceeds may be paid in any other manner agreed to by us.

TABLE OF MINIMUM MONTHLY INCOME UNDER PAYMENT OPTIONS FOR EACH $1,000 OF PROCEEDS

| OPTION 3 INCOME FOR SPECIFIED PERIOD | | AGE AT FIRST PAYMENT | OPTION 4 LIFE INCOME WITH GUARANTEED PERIOD | | | OPTION 5 LIFE INCOME WITHOUT GUARANTEED PERIOD | OPTION 6 LIFE INCOME WITH INSTALLMENT REFUND |
|---|---|---|---|---|---|---|---|
| Year | Income | | 10 Years | 15 Years | 20 Years | | |
| 1 | $84.47 | 7 and under | $2.51 | $2.51 | $2.51 | $2.51 | $2.50 |
| 2 | 42.86 | 8 | 2.53 | 2.53 | 2.53 | 2.53 | 2.52 |
| 3 | 28.99 | 9 | 2.54 | 2.54 | 2.54 | 2.54 | 2.53 |
| 4 | 22.06 | 10 | 2.56 | 2.56 | 2.56 | 2.56 | 2.55 |
| 5 | 17.91 | 11 | 2.57 | 2.57 | 2.57 | 2.57 | 2.56 |
| 6 | 15.14 | 12 | 2.59 | 2.59 | 2.59 | 2.59 | 2.58 |
| 7 | 13.16 | 13 | 2.61 | 2.61 | 2.61 | 2.61 | 2.60 |
| 8 | 11.68 | 14 | 2.63 | 2.63 | 2.62 | 2.63 | 2.61 |
| 9 | 10.53 | 15 | 2.65 | 2.65 | 2.64 | 2.65 | 2.63 |
| 10 | 9.61 | 16 | 2.67 | 2.67 | 2.66 | 2.67 | 2.65 |
| 11 | 8.86 | 17 | 2.69 | 2.69 | 2.68 | 2.69 | 2.67 |
| 12 | 8.24 | 18 | 2.70 | 2.70 | 2.70 | 2.70 | 2.69 |
| 13 | 7.71 | 19 | 2.72 | 2.72 | 2.71 | 2.72 | 2.70 |
| 14 | 7.26 | 20 | 2.75 | 2.75 | 2.74 | 2.75 | 2.73 |
| 15 | 6.87 | 21 | 2.77 | 2.77 | 2.76 | 2.77 | 2.75 |
| 16 | 6.53 | 22 | 2.80 | 2.80 | 2.79 | 2.80 | 2.77 |
| 17 | 6.23 | 23 | 2.82 | 2.82 | 2.81 | 2.82 | 2.80 |
| 18 | 5.96 | 24 | 2.85 | 2.85 | 2.84 | 2.85 | 2.82 |
| 19 | 5.73 | 25 | 2.88 | 2.87 | 2.87 | 2.88 | 2.85 |
| 20 | 5.51 | 26 | 2.91 | 2.90 | 2.90 | 2.91 | 2.88 |
| 21 | 5.32 | 27 | 2.94 | 2.93 | 2.93 | 2.94 | 2.90 |
| 22 | 5.15 | 28 | 2.98 | 2.97 | 2.96 | 2.98 | 2.93 |
| 23 | 4.99 | 29 | 3.01 | 3.00 | 2.99 | 3.01 | 2.96 |
| 24 | 4.84 | 30 | 3.05 | 3.04 | 3.02 | 3.05 | 3.00 |
| 25 | 4.71 | 31 | 3.08 | 3.07 | 3.06 | 3.08 | 3.03 |
| 26 | 4.59 | 32 | 3.12 | 3.11 | 3.10 | 3.12 | 3.06 |
| 27 | 4.48 | 33 | 3.16 | 3.15 | 3.13 | 3.16 | 3.10 |
| 28 | 4.37 | 34 | 3.20 | 3.19 | 3.17 | 3.20 | 3.14 |
| 29 | 4.27 | 35 | 3.24 | 3.22 | 3.20 | 3.24 | 3.18 |
| 30 | 4.18 | 36 | 3.28 | 3.27 | 3.25 | 3.29 | 3.21 |
| | | 37 | 3.33 | 3.32 | 3.29 | 3.34 | 3.25 |
| | | 38 | 3.38 | 3.36 | 3.33 | 3.39 | 3.29 |
| | | 39 | 3.44 | 3.42 | 3.38 | 3.45 | 3.34 |
| | | 40 | 3.49 | 3.47 | 3.43 | 3.51 | 3.41 |
| | | 41 | 3.55 | 3.52 | 3.48 | 3.57 | 3.43 |
| | | 42 | 3.61 | 3.58 | 3.53 | 3.63 | 3.49 |
| | | 43 | 3.68 | 3.64 | 3.59 | 3.69 | 3.54 |
| | | 44 | 3.74 | 3.70 | 3.64 | 3.76 | 3.60 |
| | | 45 | 3.81 | 3.76 | 3.69 | 3.84 | 3.66 |
| | | 46 | 3.88 | 3.83 | 3.75 | 3.92 | 3.71 |
| | | 47 | 3.96 | 3.90 | 3.81 | 4.00 | 3.77 |
| | | 48 | 4.04 | 3.97 | 3.87 | 4.09 | 3.84 |
| | | 49 | 4.12 | 4.05 | 3.93 | 4.17 | 3.91 |
| | | 50 | 4.20 | 4.12 | 3.99 | 4.27 | 3.98 |
| | | 51 | 4.29 | 4.19 | 4.06 | 4.37 | 4.05 |
| | | 52 | 4.39 | 4.28 | 4.13 | 4.48 | 4.13 |
| | | 53 | 4.49 | 4.36 | 4.18 | 4.59 | 4.21 |
| | | 54 | 4.60 | 4.45 | 4.25 | 4.70 | 4.29 |
| | | 55 | 4.70 | 4.54 | 4.32 | 4.82 | 4.38 |
| | | 56 | 4.81 | 4.64 | 4.38 | 4.96 | 4.48 |
| | | 57 | 4.93 | 4.72 | 4.45 | 5.10 | 4.58 |
| | | 58 | 5.06 | 4.82 | 4.51 | 5.24 | 4.67 |
| | | 59 | 5.18 | 4.92 | 4.58 | 5.40 | 4.79 |
| | | 60 | 5.32 | 5.03 | 4.64 | 5.57 | 4.90 |
| | | 61 | 5.47 | 5.13 | 4.69 | 5.74 | 5.02 |
| | | 62 | 5.62 | 5.22 | 4.75 | 5.94 | 5.15 |
| | | 63 | 5.77 | 5.33 | 4.80 | 6.14 | 5.28 |
| | | 64 | 5.93 | 5.43 | 4.85 | 6.36 | 5.42 |
| | | 65 | 6.10 | 5.53 | 4.90 | 6.61 | 5.57 |
| | | 66 | 6.26 | 5.63 | 4.94 | 6.86 | 5.72 |
| | | 67 | 6.44 | 5.72 | 4.98 | 7.13 | 5.89 |
| | | 68 | 6.62 | 5.81 | 5.01 | 7.42 | 6.07 |
| | | 69 | 6.79 | 5.90 | 5.04 | 7.73 | 6.25 |
| | | 70 | 6.98 | 5.98 | 5.07 | 8.07 | 6.44 |
| | | 71 | 7.15 | 6.05 | 5.09 | 8.43 | 6.64 |
| | | 72 | 7.33 | 6.12 | 5.11 | 8.82 | 6.86 |
| | | 73 | 7.51 | 6.17 | 5.12 | 9.24 | 7.09 |
| | | 74 | 7.68 | 6.23 | 5.13 | 9.69 | 7.33 |
| | | 75 | 7.84 | 6.28 | 5.14 | 10.18 | 7.58 |
| | | 76 | 8.00 | 6.32 | 5.15 | 10.71 | 7.84 |
| | | 77 | 8.14 | 6.36 | 5.15 | 11.27 | 8.11 |
| | | 78 | 8.28 | 6.39 | 5.15 | 11.89 | 8.41 |
| | | 79 | 8.41 | 6.41 | 5.16 | 12.53 | 8.70 |
| | | 80 | 8.52 | 6.43 | 5.16 | 13.23 | 9.03 |
| | | 81 and over | 8.61 | 6.45 | 5.16 | 13.96 | 9.35 |

| | Annual | Semi-Annual | Quarterly |
|---|---|---|---|
| To obtain the income amount payable other than monthly, multiply the monthly income by the appropriate factor. | | | |
| Option 3 | 11.87 | 5.97 | 2.99 |
| Options 4,5&6 | 11.74 | 5.94 | 2.99 |

## ENDORSEMENT

This policy is amended by adding the following provisions.

After the tenth policy anniversary the first loan applied for in each policy year will be treated as a preferred loan, up to the preferred loan limit. The preferred loan limit is 10% of the surrender value at the time a loan is taken. If the first loan in a policy year exceeds the preferred loan limit, only the amount not exceeding such limit will be treated as a preferred loan. Taking a preferred loan for an amount less than such limit will not increase such limit for any future preferred loan.

We will credit interest to the part of the cash value equal to the debt resulting from preferred loans at an annual rate no less than 0.5% below the policy loan interest rate.

Loan repayments will first reduce any debt resulting from loans other than preferred loans.

THE UNITED STATES LIFE Insurance Company
In the City of New York

*Chairman of the Board*

E-PPL 79E.2

**ENDORSEMENT**

This policy is amended to add the following provision.

At the end of the eleventh and each later policy year we will credit additional interest at an annual rate of 0.5% to the average unborrowed amount of the cash value for the policy year.

THE UNITED STATES LIFE Insurance Company
In the City of New York

*Chairman of the Board*

E-Bi 79E

**ENDORSEMENT**

The policy to which this endorsement is attached is amended as follows:

The following is added to the Surrender of Policy provision on page 11 of the policy:

During the pour-in guarantee period shown on page 2 the surrender value will not be less than the sum of premiums paid since the date of issue, less any withdrawals from the cash value since the date of issue, less debt, and less the cumulative benchmark premium. The cumulative benchmark premium is the product of (a) and (b) where (a) is the annual benchmark premium shown on page 2 and (b) is the number of policy years that have elapsed since the date of issue plus one.

If coverage is increased during the pour-in guarantee period, we will calculate a new annual benchmark premium.

THE UNITED STATES LIFE Insurance Company
In the City of New York

President

E-UL-93 79E

| Date: | 5/7/04 | | Time: | 4:03 PM |
|---|---|---|---|---|
| Pages: | 12 | | Sender: | 516 719 0876 |
| Company: | MAY-07-2004 16:07 | MORSTAN PLUS INC | Fax Number: | 516 719 0876   P.02 |

**AIG** AMERICAN GENERAL

**Part A  Life Insurance Application**

☐ American General Life Insurance Company, Houston, TX
☐ The United States Life Insurance Company in the City of New York, New York, NY

Members of American International Group, Inc.
In this application, "Company" refers to the insurance company whose name is checked above.
The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

| Personal Information |
|---|

**1. Primary Proposed Insured**

Name **MARIA Corcino Peña**   Social Security # **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**   Sex ☐ M ☑ F

Birthplace (state, country) **Santo Domingo**   Date of Birth **11-18-1962**   Age **41**

Tobacco use  Have you ever used any form of tobacco or nicotine products? ☐ yes ☑ no  If yes, date of last use _____

If yes, type and quantity of tobacco or nicotine products used _____

Driver's License No. **C6566519006162S**  State **NJ**  U.S. Citizen ☑ yes ☐ no  If no, Date of Entry _____  Visa Type _____

Address **154 Madison Ave**   City, State **Perth Amboy, NJ**   ZIP **08861**

Home Phone **(732)697-1373**  Work Phone **(609)860-0334**  E-mail Address _____

Employer **SouthCorp Packaging**   Occupation **Operator**   Length of Employment **12**

Employer Address **7 Wheeling Rd**   City, State **Dayton, NJ**   ZIP **08810**

Duties **Packaging, Bottling**

Personal Income $ **24,000.00**   Household Income $ **380,000**   Net Worth $ **404,000**

**2. Other Proposed Insured**

Name _____   Social Security # _____   Sex ☐ M ☐ F

Birthplace (state, country) _____   Date of Birth _____   Age _____

Relationship to Primary Proposed Insured _____

Tobacco use  Have you ever used any form of tobacco or nicotine products? ☐ yes ☐ no  If yes, date of last use _____

If yes, type and quantity of tobacco or nicotine products used _____

Driver's License No. _____  State _____  U.S. Citizen ☐ yes ☐ no  If no, Date of Entry _____  Visa Type _____

Address _____   City, State _____   ZIP _____

Home Phone ( )_____  Work Phone ( )_____  E-mail Address _____

Employer _____   Occupation _____   Length of Employment _____

Employer Address _____   City, State _____   ZIP _____

Duties _____

Personal Income $ _____   Household Income $ _____   Net Worth $ _____

**3. Child Rider** (Complete if a proposed insured requests child riders. If more than three children, list information in the Remarks section. Remember to complete Part B, sections 3–7, for all proposed insured children.)

| Child Name | Sex | Birthplace (state, country) | Date of Birth |
|---|---|---|---|
| _____ | ☐ M ☐ F | _____ | _____ |
| _____ | ☐ M ☐ F | _____ | _____ |
| _____ | ☐ M ☐ F | _____ | _____ |

AGLC10105R5-2003

Page 1 of 7   NJ

MAY-07-2004  16:07       MORSTAN PLUS INC

| Date: | 5/7/04 | Time: | 4:03 PM |
|---|---|---|---|
| Pages: | 12 | Sender: | 516 719 0876 |
| Company: | | Fax Number: | 516 719 0876   P.03 |

| Ownership |
|---|

**4. Owner**  ☒ Primary Proposed Insured   ☐ Other Proposed Insured   ☐ Trust   ☐ Other than a Proposed Insured or Trust
A. Complete if the proposed insured is not the owner (if contingent owner is required, use Remarks section.)

Name _____ Social Security or Tax ID # _____ Date of Birth _____

Address _____ City, State _____ ZIP _____

Home Phone (_____) _____ Relationship to Primary Proposed Insured _____

B. Complete if owner is a trust (if trustee is premium payor, also complete section 14 D.)

Exact Name of Trust _____ Trust Tax ID # _____

Current Trustee(s) _____ Date of Trust _____

| Product Information |
|---|

**5. Product Name** (if variable, complete appropriate supplement) MEDA-List Premier - Flexible Premium Adj Life Policy
Amount Applied For: Base Coverage $ 300,000    Supplemental Coverage (if applicable) $ _____
Death Benefit Compliance Test Used (if applicable): ☐ Guideline Premium   ☐ Cash Value Accumulation
Automatic Premium Loan (if applicable): ☐ Yes ☐ No
Premium Class Quoted 2784 00    Pref. non-tobacco
Reason for Insurance TO Protect Asset.

**6. Dividend Options** (For participating policy only.)
☐ Cash   ☐ Premium Reduction   ☐ Paid-up Additions   ☐ Deposit Earning Interest   ☐ Other (Explain)

**7. Death Benefit Options** (For UL & VUL only.) ☐ Option 1 - Level   ☐ Option 2 - Increasing   ☐ Option 3 - Level Plus Return of Premium

**8. Riders**   ☐ Waiver of Premium   ☐ Waiver of Monthly Deduction   ☐ Waiver of Monthly Guarantee Premium
☐ Maturity Extension Rider – Accumulation Value   ☐ Maturity Extension Rider – Death Benefit   ☐ Terminal Illness Rider
☐ Accidental Death Benefit $ _____   ☐ Other Insured $ _____   ☐ Child $ _____
☐ Spouse $ _____   Plan _____   ☐ Other Rider(s) _____

| Beneficiary |
|---|

**8. Primary**   Name FRANSISCO Antonio Gonez Go   Relationship Step-FAther   % Share 100

Name Jorge Luis Santana   Relationship _____   % Share _____

**10. Contingent**   Name See Attachment #1   Relationship _____   % Share _____

Name _____   Relationship _____   % Share _____

**11. Trust Information**   Exact Name of Trust _____   Trust Tax ID # _____

Current Trustee(s) _____   Date of Trust _____

**12. Rider Beneficiaries**  Spouse Rider _____   Child Rider _____

| Business Coverage |
|---|

**13. Business Details** (Complete only if applying for business coverage.)
Does any proposed insured have an ownership interest in the business? ☐ yes ☐ no
If yes, what is the percentage of ownership for the: Primary Proposed Insured _____   Other Proposed Insured _____
If buy-sell, stock redemption, or key person insurance, will all partners or key people be covered? ☐ yes ☐ no
Describe any special circumstances. _____

| Premium |
|---|

**14. Premium Payment**   ☒ Modal $ 2,784   ☐ Single $ _____   ☐ Additional/ Initial $ _____
A. Frequency of modal premium:   ☐ Annual   ☐ Semi-annual   ☒ Quarterly   ☐ Monthly (Bank draft)
B. Method:   ☐ Direct Billing   ☐ Bank Draft (Complete Bank Draft Authorization.)   ☐ List Bill: Number _____
☒ Other (Please explain.) Monthly
C. Amount submitted with application $ 232 –
D. Premium Payor (Complete if other than proposed insured.)

Name _____   Social Security or Tax ID # _____   Home Phone (_____)

Address _____   City, State _____   ZIP _____

AGLC103285-2003                                                                                    Page 2 of 7

Received Event (Event Succeeded)

| Date: | 5/7/04 | Time: | 4:03 PM |
|---|---|---|---|
| Pages: | 12 | Sender: | 516 719 0876 |
| Company: MAY-07-2004 15:07    MORSTAN PLUS INC | | Fax Number: | 516 719 0876    P.04 |

---

## Existing Coverage

**15. Other Life Insurance or Annuities** *(Indicate life insurance policies or annuities in force or pending for the proposed insured(s).)*
Does any proposed insured have any existing policies or annuities in force or pending annuity or life insurance contracts? ☑ yes ☐ no
*(If yes, indicate life insurance policies or annuities in force or pending for the proposed insured(s).)*

Type: 1 = individual, b = business, g = group, p = pending life insurance or annuity

| Name of Proposed Insured | Policy Number | Insurance Company | Type(s) (see above) | Year of Issue | Face Amount | Replace* | 1035 Ex |
|---|---|---|---|---|---|---|---|
| MARIA PENA | 146924641 | CIGNA | 50,000. | | 59 H | ☐ yes | ☐ yes |
| | | | | | | ☐ yes | ☐ yes |
| | | | | | | ☐ yes | ☐ yes |
| | | | | | | ☐ yes | ☐ yes |

\* Replace means that the insurance being applied for may replace, change or use any monetary value of any existing or pending life insurance policy or annuity. If replacement may be involved, complete and submit replacement-related forms. Please note: certain states require completion of replacement related forms even when other life insurance or annuities are not being replaced by the policy being applied for.

---

## Limited Temporary Life Insurance Eligibility

**16. Health and Age Questions** *(If any proposed insured answers yes to either question, temporary insurance is not available, the agreement will be void and any payment submitted will be refunded.)*

A. Has any proposed insured ever had a heart attack, stroke, cancer, diabetes or disorder of the immune system, or during the last two years been confined in a hospital or other health care facility or been advised to have any diagnostic test or surgery not yet performed?  ☐ yes ☑ no
B. Is any proposed insured age 71 or above?  ☐ yes ☑ no

---

## Nonmedical Questions

**17. Background Information** *(Complete questions A through F for all proposed insureds who are applying. If yes answer applies to any proposed insured, provide details specified after each question.)*

A. Do any proposed insureds intend to travel or reside outside of the United States or Canada within the next two years?  ☐ yes ☑ no
*(If yes, list proposed insured's name, country, date, length of stay and purpose.)*

B. In the past five years, have any proposed insureds participated in, or do they intend to participate in: any flights as a trainee, pilot or crew member, scuba diving, skydiving or parachuting, ultralight aviation, auto racing, cave exploration, hang gliding, boat racing, mountaineering, extreme sports or other hazardous activities?  ☐ yes ☑ no
*(If yes, circle the applicable activities and complete the Aviation and/or Avocation Questionnaire.)*

C. Have any proposed insureds:
1) During the past 90 days submitted an application for life insurance to any other company or begun the process of filling out an application?  ☐ yes ☑ no
*(If yes, list proposed insured's name, company name, amount applied for, purpose of insurance and if app will be placed.)*

2) Ever had a life or disability insurance application modified, rated, declined, postponed, withdrawn, canceled or refused for renewal?  ☐ yes ☑ no
*(If yes, list proposed insured's name, date and reason.)*

D. Have any proposed insureds ever filed for bankruptcy? *(If yes, list proposed insured's name, chapter filed, date, reason and if discharged.)*  ☐ yes ☑ no

E. In the past five years, have any proposed insureds been charged with or convicted of driving under the influence of alcohol or drugs or had any driving violations? *(If yes, list proposed insured's name, date, state, license no. and specific violation.)*  ☐ yes ☑ no

F. Have any proposed insureds ever been convicted of, or pled guilty or no contest to a felony, or do they have any such charge pending against them? *(If yes, list proposed insured name, date, state and felony.)*  ☐ yes ☑ no

---

## Remarks

18. Details and Explanations

-4-

MAY-26-2004  12:07    MORSTAN PLUS INC    516 719 0876    P.12

| Date: | 5/7/04 | | Time: | 4:03 PM |
|---|---|---|---|---|
| Pages: | 12 | | Sender: | 516 719 0876 |
| Company: | MAY-07-2004  15:08 | MORSTAN PLUS INC | Fax Number: | 516  719 0876    P.05 |

## Authorization and Signatures

American General Life Insurance Company, Houston, TX          The United States Life Insurance Company in the City of New York, New York, NY

The above listed life insurance company as selected on page one of this application is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments. In this application, "Company" refers to the insurance company which was selected on page one.

### Authorization to Obtain and Disclose Information and Declaration

I give my consent to all of the entities listed below to give to the Company, its legal representative, American General Life Companies (AGLC) (an affiliated service company), and affiliated insurers all information they have pertaining to: medical consultations, treatments, or surgeries; hospital confinements for physical and mental conditions; use of drugs or alcohol; or any other information for me, my spouse or my minor children. Other information could include items such as: personal finances; habits; hazardous avocations; motor vehicle records from the Department of Motor Vehicles; court records; or foreign travel, etc. I give my consent for the information outlined above to be provided by: any physician or medical practitioner; any hospital, clinic or other health care facility; any insurance or reinsurance company; any consumer reporting agency or insurance support organization; my employer; or the Medical Information Bureau (MIB).

I understand the information obtained will be used by the Company to determine: (1) eligibility for insurance; and (2) eligibility for benefits under an existing policy. Any information gathered during the evaluation of my application may be disclosed to: reinsurers; the MIB; other persons or organizations performing business or legal services in connection with my application or claim; me; any physician designated by me; or any person or entity required to receive such information by law or as I may further consent.

I, as well as any person authorized to act on my behalf, may, upon written request, obtain a copy of this consent. I understand this consent may be revoked at any time by sending a written request to the Company, Attn: Underwriting Department at P.O. Box 1931, Houston, TX 77251-1931.

This consent will be valid for 24 months from the date of this application. I agree that a copy of this consent will be as valid as the original. I authorize AGLC or affiliated insurers to obtain an investigative consumer report on me. I understand that I may: request to be interviewed for the report; and receive, upon written request, a copy of such report.   □ Check if you wish to be interviewed.

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect under this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application. I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurer's rights or requirements.

I have received a copy of the Notices to the Proposed Insured.

Limited Temporary Life Insurance Agreement – If eligible, I have received and accepted the LTLIA. Such insurance is available only if: (1) the full first modal premium is submitted with this application; and (2) only "no" answers have been given by any proposed insured to the Health and Age Questions.

Under penalties of perjury, I certify: (1) that the number shown on this application is my correct Social Security or Tax ID number; and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code; and (3) that I am a U.S. person (including a U.S. resident alien). The Internal Revenue Service does not require my consent to any provisions of this document other than the certifications required to avoid backup withholding. You must cross out item (2) if you are subject to backup withholding and cross out item (3) if you are not a U.S. person (including a U.S. resident alien).

Proposed Insured(s)/Owner Signature(s)

Signed at (city, state) __Perth Amboy, NJ__     On (date) __5-7-04__

X __Maria Pena__                                      X _____
Primary Proposed Insured (if under age 15, signature of parent or guardian)     Other Proposed Insured (if under age 15, signature of parent or guardian)

X _____
Owner (if other than proposed insured)

Agent(s) Signature(s)
I certify that the information supplied by the proposed insured(s)/owner has been truthfully and accurately recorded on the Part A application.

__255602-L4836__
Writing Agent Name (please print)                    Writing Agent #

X __Carlos A. Sanchez__                               X _____
Writing Agent Signature                              Countersigned (Licensed resident agent if state required)

| If the Company needs to contact the proposed insured(s), when would be the best time to call? | | | |
|---|---|---|---|
| Time | Day of the Week | Date | Phone # (    ) |

AGLC100595-2003                                                                  Page 4 of 7



**AMERICAN GENERAL**

**Part B  Life Insurance Application**
New Jersey Version

☐ American General Life Insurance Company, Houston, TX
☐ The United States Life Insurance Company in the City of New York, New York, NY
Members of American International Group, Inc.

In this application, "Company" refers to the insurance company whose name is checked above.

The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

| Personal Information |
| --- |

1. **Primary Proposed Insured**
   Name MARIA PENA CORCINO   Date of Birth 11|18|62   Social Security # 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

2. **Other Proposed Insured**
   Name _____ Date of Birth _____ Social Security # _____

3. **Children** *(Provide name and date of birth for all children.)*
   _____
   _____

| Medical History |
| --- |

4. **Physician Information**
   Name and address of each proposed insured's personal physician(s).  *(Write None if proposed insured(s) do not have one.)*
   Primary Proposed Insured _____
   Other Proposed Insured _____ NONE
   Child(ren) _____
   Name of insured, date, reason, findings and treatment at last visit _____
   _____
   _____

5. **Height and Weight**
   Primary Proposed Insured 5 ft. 05 in. 120 lbs.  Other Proposed Insured ___ ft. ___ in. ___ lbs.
   Child Name _____ NONE ___ ft. ___ in. ___ lbs.  If less than 1 yr. old, weight at birth _____
   Child Name _____ ___ ft. ___ in. ___ lbs.  If less than 1 yr. old, weight at birth _____
   Child Name _____ ___ ft. ___ in. ___ lbs.  If less than 1 yr. old, weight at birth _____
   Has any proposed insured had any weight change in excess of 10 lbs. in the past year? ☐ yes ☒ no  If yes complete:
   Name _____ Loss ____ lbs.  Gain ____ lbs.  Reason _____

6. **Family History**

| | Age if Living | Age at Death | Heart Disease? | Cancer History? |
| --- | --- | --- | --- | --- |
| **Primary Proposed Insured** | | | | |
| Father | 60 | ___ | ☒ No ☐ Yes, age of onset ___ | ☒ No ☐ Yes, age of onset ___ Type ___ |
| Mother | 61 | ___ | ☒ No ☐ Yes, age of onset ___ | ☒ No ☐ Yes, age of onset ___ Type ___ |
| **Other Proposed Insured** | | | | |
| Father | ___ | ___ | ☐ No ☐ Yes, age of onset ___ | ☐ No ☐ Yes, age of onset ___ Type ___ |
| Mother | ___ | ___ | ☐ No ☐ Yes, age of onset ___ | ☐ No ☐ Yes, age of onset ___ Type ___ |

AGLC 100698-NJ

*Monica [signature]*

## 7. Personal Health History

*Complete questions A through G for all proposed insureds who are applying. If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

**A.** Has any proposed insured ever been diagnosed as having, been treated for, or consulted a licensed health care provider for:

1) heart disease, heart attack, chest pain, irregular heartbeat, heart murmur, high cholesterol, high blood pressure or other disorder of the heart?  ☐ yes ☑ no

2) a blood clot, aneurysm, stroke, or other disease, disorder or blockage of the arteries or veins?  ☐ yes ☑ no

3) cancer, tumors, masses, cysts or other such abnormalities?  ☐ yes ☑ no

4) diabetes, a disorder of the thyroid or other glands or a disorder of the immune system, blood or lymphatic system?  ☐ yes ☑ no

5) colitis, hepatitis or a disorder of the esophagus, stomach, liver, pancreas, gall bladder or intestine?  ☐ yes ☑ no

6) a disorder of the kidneys, bladder, prostate or reproductive organs or sugar or protein in the urine?  ☐ yes ☑ no

7) asthma, bronchitis, emphysema, sleep apnea or other breathing or lung disorder?  ☐ yes ☑ no

8) seizures, a disorder of the brain or spinal cord or other nervous system abnormality, including a mental or nervous disorder?  ☐ yes ☑ no

9) arthritis, muscle disorders, connective tissue disease or other bone or joint disorders?  ☐ yes ☑ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**B.** Is any proposed insured currently taking any medication, treatment or therapy or under medical observation? *(If yes, explain.)*  ☐ yes ☑ no

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**C.** Has any proposed insured in the past three years had but not sought treatment for:

1) fainting spells, nervous disorder, headaches, convulsions or paralysis?  ☐ yes ☑ no

2) any pain or discomfort in the chest or shortness of breath?  ☐ yes ☑ no

3) disorders of the stomach, intestines or rectum, or blood in the urine?  ☐ yes ☑ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

*Maria Cora*

## Personal Health History (cont.)

*If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

**D. Has any proposed insured ever:**

1) sought or received advice, counseling or treatment by a medical professional for the use of alcohol or drugs, including prescription drugs? ☐ yes ☑ no

2) used cocaine, marijuana, heroin, controlled substances or any other drug, except as legally prescribed by a physician? ☐ yes ☑ no

*(If yes answered to D1 or D2, complete Drug/Alcohol Questionnaire.)*

**E. Has any proposed insured ever been diagnosed or treated by any member of the medical profession for AIDS Related Complex (ARC) or Acquired Immune Deficiency Syndrome (AIDS)?** *(If yes, explain.)* ☐ yes ☑ no

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**F. In the past 10 years, has any proposed insured:**

1) been hospitalized, consulted a health care provider or had any illness, injury or surgery? ☐ yes ☑ no

2) had any laboratory tests, treatments or diagnostic procedures, including x-rays, scans or EKGs? ☐ yes ☑ no

3) been advised to have any diagnostic test, hospitalization or treatment that was not completed? ☐ yes ☑ no

4) received or claimed disability or hospital indemnity benefits or a pension for any injury, sickness, disability or impaired condition? ☐ yes ☑ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**G. Does any proposed insured have any symptoms or knowledge of any other condition that is not disclosed above?** *(If yes, explain.)* ☐ yes ☑ no

| Name of Proposed Insured | Details |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

## Statements and Signatures

**Statement by the Proposed Insured(s)**

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that the application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect pursuant to this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurer's rights or requirements.

**Fraud**

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**Proposed Insured(s) Signature(s)**

Signed at (city, state) _Perth Amboy, N.J_  On (date) _5/21/04_

X _Maria Pena cousino_   X _____

Primary Proposed Insured (if under age 15, signature of parent or guardian)   Other Proposed Insured (if under age 15, signature of parent or guardian)

**Signature(s) of Interviewer(s)**

To be signed by all interviewers, as applicable

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

_Rohan Nodin_

Writing Agent Name (please print)   Writing Agent #

X _____   X _____

Writing Agent Signature   Countersigned (Licensed resident agent if state required)

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

_____   _____

Other Company Representative Name (please print)   Company

X _____

Other Company Representative Signature

**Paramedical Examiner/Medical Doctor Signature**

Agent should inform paramed or medical doctor of proper location to send form upon completion.

I certify that this exam was conducted the ___21__ day of ___MAY___, 20_04_, at __8__ ☐am ☐pm

Examiner's Address _____

Examiner's Phone # ( )

Examiner's Name _Rohan Nodin_

Examiner's Signature X _____

Paramed: Use company stamp below.

APPS MEDICAL SERVICES
P.O. BOX 398
MAPLEWOOD, NJ 07040-0998
www.appsnj.com

AGLC 100568-NJ   Page 4 of 4

TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES
PER $1,000 OF AMOUNT AT RISK, EXCLUDING RIDERS

| ATTAINED AGE | INSURED'S MONTHLY RATE | ATTAINED AGE | INSURED'S MONTHLY RATE |
|---|---|---|---|
| 42 | 0.30390 | 72 | 2.84790 |
| 43 | 0.33070 | 73 | 3.17540 |
| 44 | 0.35750 | 74 | 3.55930 |
| 45 | 0.38510 | 75 | 3.98820 |
| 46 | 0.41360 | 76 | 4.45290 |
| 47 | 0.44380 | 77 | 4.94360 |
| 48 | 0.47480 | 78 | 5.45800 |
| 49 | 0.50830 | 79 | 6.01270 |
| 50 | 0.54690 | 80 | 6.63230 |
| 51 | 0.58560 | 81 | 7.33840 |
| 52 | 0.62920 | 82 | 8.15280 |
| 53 | 0.68050 | 83 | 9.08720 |
| 54 | 0.73260 | 84 | 10.19930 |
| 55 | 0.78730 | 85 | 11.32660 |
| 56 | 0.84210 | 86 | 12.62730 |
| 57 | 0.89430 | 87 | 13.90120 |
| 58 | 0.94330 | 88 | 15.36670 |
| 59 | 0.99390 | 89 | 16.78570 |
| 60 | 1.04960 | 90 | 18.45260 |
| 61 | 1.12150 | 91 | 20.26920 |
| 62 | 1.20860 | 92 | 22.30080 |
| 63 | 1.32640 | 93 | 24.66820 |
| 64 | 1.45790 | 94 | 27.67150 |
| 65 | 1.60580 | 95 | 32.32210 |
| 66 | 1.75230 | 96 | 40.04680 |
| 67 | 1.90500 | 97 | 55.15920 |
| 68 | 2.04360 | 98 | 83.33000 |
| 69 | 2.19950 | 99 | 83.33000 |
| 70 | 2.36510 | 100 | 83.33000 |
| 71 | 2.58030 | | |

THE GUARANTEED MAXIMUM COST OF INSURANCE RATES ARE BASED ON THE 1980 CSO
SMOKER MORTALITY TABLE OR THE 1980 CSO NONSMOKER MORTALITY TABLE, AGE
NEAREST BIRTHDAY, IN ACCORDANCE WITH THE INSURED'S UNDERWRITING CLASS.

FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY WITH FLEXIBLE DEATH
BENEFIT AND CASH VALUE
PREMIUMS PAYABLE FOR LIFE OF INSURED UNTIL MATURITY DATE
DEATH BENEFIT PAYABLE AT DEATH OF INSURED PRIOR TO MATURITY DATE
CASH VALUE, LESS ANY DEBT, PAYABLE ON MATURITY DATE          ADJUSTABLE LIFE
                                                               NO DIVIDENDS

# EXHIBIT B

| Date: | 5/7/04 | | Time: | 4:03 PM |
|---|---|---|---|---|
| Pages: | 12 | | Sender: | 516 719 0878 |
| Company: MAY-07-2004 16:07 | MORSTAN PLUS INC | | Fax Number: | 516 719 8878    P.02 |

# AIG    AMERICAN GENERAL

## Part A  Life Insurance Application

☐ American General Life Insurance Company, Houston, TX
☐ The United States Life Insurance Company in the City of New York, New York, NY

Members of American International Group, Inc.
In this application, "Company" refers to the insurance company whose name is checked above.
The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

### Personal Information

**1. Primary Proposed Insured**
Name MARIA Corcino PeñA    Social Security # 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    Sex ☐M ☑F
Birthplace (state, country) SAnto Domingo    Date of Birth 11-18-1962    Age 41
Tobacco use  Have you ever used any form of tobacco or nicotine products? ☐ yes ☑ no  If yes, date of last use _____
If yes, type and quantity of tobacco or nicotine products used _____
Driver's License No. C656654006165    State NJ  U.S.Citizen ☑ yes ☐ no  If no, Date of Entry _____  Visa Type _____
Address 154 Madison Ave    City, State Perth AMboy, NJ    ZIP 08861
Home Phone (732)697-0373    Work Phone (809)380-0334    E-mail Address _____
Employer South Coco Packaging    Occupation Operator    Length of Employment 12
Employer Address 7 Wheeling Rd    City, State Dayton, NJ    ZIP 08810
Duties PACKAGING, BottLing    
Personal income $ 24,000.00    Household income $ 380,000    Net Worth $ 404,000

**2. Other Proposed Insured**
Name _____    Social Security # _____    Sex ☐M ☐F
Birthplace (state, country) _____    Date of Birth _____    Age _____
Relationship to Primary Proposed Insured _____
Tobacco use  Have you ever used any form of tobacco or nicotine products? ☐ yes ☐ no  If yes, date of last use _____
If yes, type and quantity of tobacco or nicotine products used _____
Driver's License No. _____    State ____  U.S.Citizen ☐ yes ☐ no  If no, Date of Entry _____  Visa Type _____
Address _____    City, State _____    ZIP _____
Home Phone ( )    Work Phone ( )    E-mail Address _____
Employer _____    Occupation _____    Length of Employment _____
Employer Address _____    City, State _____    ZIP _____
Duties _____
Personal income $ _____    Household income $ _____    Net Worth $ _____

**3. Child Rider** (Complete if a proposed insured requests child riders. If more than three children, list information in the Remarks section. Remember to complete Part B, sections 3-7, for all proposed insured children.)

| Child Name | Sex | Birthplace (state, country) | Date of Birth |
|---|---|---|---|
| _____ | ☐ M ☐ F | _____ | _____ |
| _____ | ☐ M ☐ F | _____ | _____ |
| _____ | ☐ M ☐ F | _____ | _____ |

AIG07800 565-0000    Page 1 of 7    NJ

000000522

MAY-26-2004 12:03     MORSTAN PLUS INC     516 719 0876     P.03
4/20/0511:31
015318 005033

| Date: | 5/7/04 | | Time: | 4:03 PM |
|---|---|---|---|---|
| Pages: | 12 | | Sender: | 516 719 0876 |
| Company: MAY-07-2004 16:07 | MORSTAN PLUS INC | | Fax Number: | 516 719 0876   P.03 |

---

**Ownership**

4. Owner ☒ Primary Proposed Insured   ☐ Other Proposed Insured   ☐ Trust   ☐ Other than a Proposed Insured or Trust
A. Complete if the proposed insured is not the owner (If contingent owner is required, use Remarks section.)

Name_____ Social Security or Tax ID #_____ Date of Birth_____

Address_____ City, State_____ ZIP_____

Home Phone (_____)_____ Relationship to Primary Proposed Insured_____

B. Complete if owner is a trust (If trustee is premium payor, also complete section 14 D.)
Exact Name of Trust_____ Trust Tax ID #_____
Current Trustee(s)_____ Date of Trust_____

**Product Information**

5. Product Name (If variable, complete appropriate supplement.) HEDA-List Premier - Flexible Premium Adj Life Policy
Amount Applied For: Base Coverage $ 300,000   Supplemental Coverage (If applicable) $_____
Death Benefit Compliance Test Used (If applicable): ☐ Guideline Premium  ☐ Cash Value Accumulation
Automatic Premium Loan (If applicable): ☐ Yes ☐ No
Premium Class Quoted 2784.00   Pref. non-tobacco
Reason for Insurance  To Protect Asset.

6. Dividend Options (For participating policy only.)
☐ Cash   ☐ Premium Reduction   ☐ Paid-up Additions   ☐ Deposit Earning Interest   ☐ Other (Explain)_____

7. Death Benefit Options (For UL & VUL only.) ☐ Option 1 - Level   ☐ Option 2 - Increasing   ☐ Option 3 - Level Plus Return of Premium

8. Riders     ☐ Waiver of Premium     ☐ Waiver of Monthly Deduction     ☐ Waiver of Monthly Guarantee Premium
☐ Maturity Extension Rider – Accumulation Value     ☐ Maturity Extension Rider – Death Benefit     ☐ Terminal Illness Rider
☐ Accidental Death Benefit $_____     ☐ Other Insured $_____     ☐ Child $_____
☐ Spouse $_____ Plan_____   ☐ Other Rider(s)_____

**Beneficiary**

9. Primary   Name FRANCISCO ANTONIO Gomez S/o   Relationship Step-Father   % Share 100
Name Jorge Luis Santana   Relationship_____   % Share_____

10. Contingent   Name See Attachment #1   Relationship_____   % Share_____
Name_____   Relationship_____   % Share_____

11. Trust Information   Exact Name of Trust_____ Trust Tax ID #_____
Current Trustee(s)_____ Date of Trust_____

12. Rider Beneficiaries  Spouse Rider_____ Child Rider_____

**Business Coverage**

13. Business Details  (Complete only if applying for business coverage.)
Does any proposed insured have an ownership interest in the business? ☐ yes ☐ no
If yes, what is the percentage of ownership for the: Primary Proposed Insured_____   Other Proposed Insured_____
If buy-sell, stock redemption, or key person insurance, will all partners or key people be covered? ☐ yes ☐ no
Describe any special circumstances._____

**Premium**

14. Premium Payment   ☒ Modal $ 2,784   ☐ Single $_____   ☐ Additional Initial $_____
A. Frequency of modal premium: ☐ Annual   ☐ Semi-annual   ☒ Quarterly   ☐ Monthly (Bank draft)
B. Method: ☐ Direct Billing   ☐ Bank Draft (Complete Bank Draft Authorization.)   ☐ List Bill: Number_____
☒ Other (Please explain) Monthly
C. Amount submitted with application $ 232 –
D. Premium Payor (Complete if other than proposed insured)
Name_____ Social Security or Tax ID #_____ Home Phone (_____)_____
Address_____ City, State_____ ZIP_____

AGLC- _____-_____     Page 2 of 7

000000523

MAY-26-2004  12:04    MORSTAN PLUS INC    516 719 0876    P.04

Received Event (Event Succeeded)

4/20/0611:31
015318005034

| | | | |
|---|---|---|---|
| Date: | 5/7/04 | Time: | 4:03 PM |
| Pages: | 12 | Sender: | 516 719 0876 |
| Company MAY-07-2004  16:07    MORSTAN PLUS INC | | Fax Number: | 516 719 0876    P.04 |

## Existing Coverage

15. Other Life Insurance or Annuities  (Indicate life insurance policies or annuities in force or pending for the proposed insured(s).)
Does any proposed insured have any existing or pending annuity or life insurance contracts?   ☑ yes  ☐ no
(If yes, indicate life insurance policies or annuities in force or pending for the proposed insured(s).)
Type:  i = individual, b = business, g = group, p = pending life insurance or annuity

| Name of Proposed Insured | Policy Number | Insurance Company | Type(c) (see above) | Year of Issue | Face Amount | Replace* | 1035 Ex |
|---|---|---|---|---|---|---|---|
| Maria Pena | 146924647 | CIGNA | Sol plan | | 59 K | ☐ yes | ☐ yes |
| | | | | | | ☐ yes | ☐ yes |
| | | | | | | ☐ yes | ☐ yes |
| | | | | | | ☐ yes | ☐ yes |

* Replace means that the insurance being applied for may replace, change or use any monetary value of any existing or pending life insurance policy or annuity. If replacement may be involved, complete and submit replacement-related forms. Please note: certain states require completion of replacement related forms even when other life insurance or annuities are not being replaced by the policy being applied for.

## Limited Temporary Life Insurance Eligibility

16. Health and Age Questions  (If any proposed insured answers yes to either question, temporary insurance is not available, the agreement will be void and any payment submitted will be refunded.)

A. Has any proposed insured ever had a heart attack, stroke, cancer, diabetes or disorder of the immune system, or during the last two years been confined in a hospital or other health care facility or been advised to have any diagnostic test or surgery not yet performed?   ☐ yes  ☑ no
B. Is any proposed insured age 71 or above?   ☐ yes  ☐ no

## Nonmedical Questions

17. Background Information  (Complete questions A through F for all proposed insureds who are applying. If yes answer applies to any proposed insured, provide details specified after each question.)

A. Do any proposed insureds intend to travel or reside outside of the United States or Canada within the next two years?   ☐ yes  ☑ no
(If yes, list proposed insured's name, country, date, length of stay and purpose.)

B. In the past five years, have any proposed insureds participated in, or do they intend to participate in: any flights as a trainee, pilot or crew member, scuba diving, skydiving or parachuting, ultralight aviation, auto racing, cave exploration, hang gliding, boat racing, mountaineering, extreme sports or other hazardous activities?   ☐ yes  ☑ no
(If yes, circle the applicable activities and complete the Aviation and/or Avocation Questionnaire.)
C. Have any proposed insureds:

1) During the past 90 days submitted an application for life insurance to any other company or begun the process of filling out an application?   ☐ yes  ☑ no
(If yes, list proposed insured's name, company name, amount applied for, purpose of insurance and if app will be placed.)

2) Ever had a life or disability insurance application modified, rated, declined, postponed, withdrawn, canceled or refused for renewal?   ☐ yes  ☑ no
(If yes, list proposed insured's name, date and reason.)

D. Have any proposed insureds ever filed for bankruptcy?  (If yes, list proposed insured's name, chapter filed, date, reason and if discharged.)   ☐ yes  ☑ no

E. In the past five years, have any proposed insureds been charged with or convicted of driving under the influence of alcohol or drugs or had any driving violations?  (If yes, list proposed insured's name, date, state, license no. and specific violation.)   ☐ yes  ☑ no

F. Have any proposed insureds ever been convicted of, or pled guilty or no contest to a felony, or do they have any such charges pending against them?  (If yes, list proposed insured name, date, state and felony.)   ☐ yes  ☑ no

## Remarks

18. Details and Explanations

AGLD-00006-2001    Page 5 of 7

000000524

MAY-26-2004  12:07    MORSTAN PLUS INC    516 719-0876    P.42
4/20/05 11:32
015318 005035

| Date: | 5/7/04 | Time: | 4:03 PM |
|---|---|---|---|
| Pages: | 12 | Sender: | 516 719 0876 |
| Company: | MORSTAN PLUS INC | Fax Number: | 516 719 0876    P.05 |

MAY-27-2004  16:08    MORSTAN PLUS INC

---

| Authorization and Signatures |
|---|

**American General Life Insurance Company, Houston, TX**   **The United States Life Insurance Company in the City of New York, New York, NY**

The above listed life insurance company as selected on page one of this application is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments. In this application, "Company" refers to the Insurance company which was selected on page one.

**Authorization to Obtain and Disclose Information and Declaration**

I give my consent to all of the entities listed below to give to the Company, its legal representative, American General Life Companies (AGLC) (an affiliated service company), and affiliated insurers all information they have pertaining to: medical consultations, treatments, or surgeries; hospital confinements for physical and mental conditions; use of drugs or alcohol; or any other information for me, my spouse or my minor children. Other information could include items such as: personal finances; habits; hazardous avocations; motor vehicle records from the Department of Motor Vehicles; court records; or foreign travel, etc. I give my consent for the information outlined above to be provided by: any physician or medical practitioner; any hospital, clinic or other health care facility; any insurance or reinsurance company; any consumer reporting agency or insurance support organization; my employer; the Medical Information Bureau (MIB).

I understand the information obtained will be used by the Company to determine: (1) eligibility for insurance; and (2) eligibility for benefits under an existing policy. Any information gathered during the evaluation of my application may be disclosed to: reinsurers; the MIB; other persons or organizations performing business or legal services in connection with my application or claim; me; any physician designated by me; or any person or entity required to receive such information by law or as I may further consent.

I, as well as any person authorized to act on my behalf, may, upon written request, obtain a copy of this consent. I understand this consent may be revoked at any time by sending a written request to the Company, Attn: Underwriting Department at P.O. Box 1931, Houston, TX 77251-1931.

This consent will be valid for 24 months from the date of this application. I agree that a copy of this consent will be as valid as the original. I authorize AGLC or affiliated insurers to obtain an investigative consumer report on me. I understand that I may: request to be interviewed for the report; and receive, upon written request, a copy of such report.  ☐ Check if you wish to be interviewed.

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect under this application, or under any new policy issued by the Company, unless or until the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application. I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurer's rights or requirements.

I have received a copy of the Notice to the Proposed Insured.

Limited Temporary Life Insurance Agreement – If eligible, I have received and accepted the LTLIA. Such insurance is available only if: (1) the full first modal premium is submitted with this application; and (2) only "no" answers have been given by any proposed insured to the Health and Age Questions.

Under penalties of perjury, I certify: (1) that the number shown on this application is my correct Social Security or Tax ID number; and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code; and (3) that I am a U.S. person (including a U.S. resident alien). The Internal Revenue Service does not require my consent to any provisions of this document other than the certifications required to avoid backup withholding. You must cross out item (2) if you are subject to backup withholding and cross out item (3) if you are not a U.S. person (including a U.S. resident alien).

Proposed Insured(s)/Owner Signature(s)

Signed at (city, state) **Perth Amboy, NJ**   On (date) **5-7-04**

X  *Maria Rena*   X _____
Primary Proposed Insured (if under age 15, signature of parent or guardian)   Other Proposed Insured (if under age 15, signature of parent or guardian)

X _____
Owner (if other than proposed insured)

Agent(s) Signature(s)
I certify that the information supplied by the proposed insured(s)/owner has been truthfully and accurately recorded on the Part A application.

X _____   **255 08-L4836**
Writing Agent Name (please print)   Writing Agent #

X  **Carlos A. Sanchez**   X _____
Writing Agent Signature   Countersigned (Licensed resident agent if state required)

| If the Company needs to contact the proposed insured(s), when would be the best time to call? |
|---|
| Time | Day of the Week | Date | Phone # (   ) |

AGLC100585-2003    Page 4 of 7

000000525

MAY-26-2004 12:10    MORSTAN PLUS INC                 516 719 9975    P.23
May 25 04 11:26a    APPS                    9737639223    4/20/0511:22
                                                       015318005036



**AIG** AMERICAN GENERAL          **Part B Life Insurance Application**
                                    **New Jersey Version**

☐ **American General Life Insurance Company, Houston, TX**
☐ **The United States Life Insurance Company in the City of New York, New York, NY**

Members of American International Group, Inc.

In this application, "Company" refers to the insurance company whose name is checked above.

The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

| Personal Information |
|---|

1. **Primary Proposed Insured**
   Name MARIA PENA CARCINO   Date of Birth 11|18|62   Social Security # 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

2. **Other Proposed Insured**
   Name _____   Date of Birth _____   Social Security # _____

3. **Children** *(Provide name and date of birth for all children.)*
   _____

| Medical History |
|---|

4. **Physician Information**
   Name and address of each proposed insured's personal physician(s). *(Write None if proposed insured(s) do not have one.)*
   **Primary Proposed Insured** _____
   **Other Proposed Insured** _____ NONE _____
   **Child(ren)** _____
   Name of insured, date, reason, findings and treatment at last visit _____
   _____
   _____
   _____

5. **Height and Weight**
   Primary Proposed Insured 5 ft 05 in. 130 lbs.   Other Proposed Insured _____ ft _____ in. _____ lbs.
   Child Name _____ NONE _____ ft _____ in. _____ lbs.   If less than 1 yr. old, weight at birth _____
   Child Name _____ ft _____ in. _____ lbs.   If less than 1 yr. old, weight at birth _____
   Child Name _____ ft _____ in. _____ lbs.   If less than 1 yr. old, weight at birth _____
   Has any proposed insured had any weight change in excess of 10 lbs. in the past year?  ☐ yes ☒ no   If yes complete:
   Name _____   Loss ____ lbs.   Gain ____ lbs.   Reason _____

6. **Family History**

| Primary Proposed Insured | Age if Living | Age at Death | Heart Disease? | Cancer History? |
|---|---|---|---|---|
| Father | 60 | ____ | ☒ No ☐ Yes, age of onset ____ | ☒ No ☐ Yes, age of onset ____ Type ____ |
| Mother | 61 | ____ | ☒ No ☐ Yes, age of onset ____ | ☒ No ☐ Yes, age of onset ____ Type ____ |
| Other Proposed Insured | | | | |
| Father | ____ | ____ | ☐ No ☐ Yes, age of onset ____ | ☐ No ☐ Yes, age of onset ____ Type ____ |
| Mother | ____ | ____ | ☐ No ☐ Yes, age of onset ____ | ☐ No ☐ Yes, age of onset ____ Type ____ |

000000526

MAY-25-2004 12:11    MORSTAN PLUS INC    9737639223
May 25 04 11:26a    APPS

*Manu* [signature]

7.  **Personal Health History**

*Complete questions A through G for all proposed insureds who are applying. If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

A.  Has any proposed insured ever been diagnosed as having, been treated for, or consulted a licensed health care provider for:

    1)  heart disease, heart attack, chest pain, irregular heartbeat, heart murmur, high cholesterol, high blood pressure or other disorder of the heart?      ☐ yes ☒ no

    2)  a blood clot, aneurysm, stroke, or other disease, disorder or blockage of the arteries or veins?      ☐ yes ☒ no

    3)  cancer, tumors, masses, cysts or other such abnormalities?      ☐ yes ☒ no

    4)  diabetes, a disorder of the thyroid or other glands or a disorder of the immune system, blood or lymphatic system?      ☐ yes ☒ no

    5)  colitis, hepatitis or a disorder of the esophagus, stomach, liver, pancreas, gall bladder or intestine?      ☐ yes ☒ no

    6)  a disorder of the kidneys, bladder, prostate or reproductive organs or sugar or protein in the urine?      ☐ yes ☒ no

    7)  asthma, bronchitis, emphysema, sleep apnea or other breathing or lung disorder?      ☐ yes ☒ no

    8)  seizures, a disorder of the brain or spinal cord or other nervous system abnormality, including a mental or nervous disorder?      ☐ yes ☒ no

    9)  arthritis, muscle disorders, connective tissue disease or other bone or joint disorders?      ☐ yes ☒ no

    *(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
| --- | --- |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

B.  Is any proposed insured currently taking any medication, treatment or therapy or under medical observation?      ☐ yes ☒ no
    *(If yes, explain.)*

| Name of Proposed Insured | Details |
| --- | --- |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

C.  Has any proposed insured in the past three years had but not sought treatment for:

    1)  fainting spells, nervous disorder, headaches, convulsions or paralysis?      ☐ yes ☒ no

    2)  any pain or discomfort in the chest or shortness of breath?      ☐ yes ☐ no

    3)  disorders of the stomach, intestines or rectum, or blood in the urine?      ☐ yes ☐ no

    *(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
| --- | --- |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

000000527

MAY-26-2004  12:11      MORSTAN PLUS INC                516 719-8826    P.26

4/20/05111932

015318005038

*Maria Parra*

## Personal Health History (cont.)

*If yes answer applies to any proposed insured, provide details, such as: proposed insured's name, date of first diagnosis, name and address of doctor, tests performed, test results, medication(s) or recommended treatment in the area provided.*

**D. Has any proposed insured ever:**

1) sought or received advice, counseling or treatment by a medical professional for the use of alcohol or drugs, including prescription drugs?          ☐ yes ☒ no

2) used cocaine, marijuana, heroin, controlled substances or any other drug, except as legally prescribed by a physician?          ☐ yes ☒ no

*(If yes answered to D1 or D2, complete Drug/Alcohol Questionnaire.)*

**E. Has any proposed insured ever been diagnosed or treated by any member of the medical profession for AIDS Related Complex (ARC) or Acquired Immune Deficiency Syndrome (AIDS)?** *(If yes, explain.)*          ☐ yes ☒ no

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |

**F. In the past 10 years, has any proposed insured:**

1) been hospitalized, consulted a health care provider or had any illness, injury or surgery?          ☐ yes ☒ no

2) had any laboratory tests, treatments or diagnostic procedures, including x-rays, scans or EKGs?          ☐ yes ☒ no

3) been advised to have any diagnostic test, hospitalization or treatment that was not completed?          ☐ yes ☒ no

4) received or claimed disability or hospital indemnity benefits or a pension for any injury, sickness, disability or impaired condition?          ☐ yes ☒ no

*(If any question above is answered yes, explain.)*

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |

**G. Does any proposed insured have any symptoms or knowledge of any other condition that is not disclosed above?** *(If yes, explain.)*          ☐ yes ☒ no

| Name of Proposed Insured | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |

MAY-25-2004  12:11    MURSTAN PLUS INC    516 719-0036    P.25
May 25 04 11:27a    HPPS    9737639223    4/20/05 11:525
015318 005039

## Statements and Signatures

### Statement by the Proposed Insured(s)

I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA), I understand and agree that no insurance will be in effect pursuant to this application, or under any new policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the insurer's rights or requirements.

### Fraud

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**Proposed Insured(s) Signature(s)**

Signed at (city, state) _Perth Amboy, N.J_    On (date) _5/21/04_

X _Maria Rena Collins_    X _____
Primary Proposed Insured (if under age 15, signature of parent or guardian)    Other Proposed Insured (if under age 15, signature of parent or guardian)

### Signature(s) of Interviewer(s)

To be signed by all interviewers, as applicable

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

_Rehan Uddin_ _____
Writing Agent Name (please print)    Writing Agent #

X _____    X _____
Writing Agent Signature    Countersigned (Licensed resident agent if state required)

I certify that the information supplied by the proposed insured(s) has been truthfully and accurately recorded on the Part B application.

_____    _____
Other Company Representative Name (please print)    Company

X _____
Other Company Representative Signature

### Paramedical Examiner/Medical Doctor Signature

Agent should inform paramed or medical doctor of proper location to send form upon completion.

I certify that this exam was conducted the _21_ day of _MAY_ 20_04_ at _8N_ ☑am ☐pm

Examiner's Address _____

Examiner's Phone # ( )

Examiner's Name _Rehan Uddin_

Examiner's Signature X _____

Paramed: Use company stamp below.



P.O. BOX 398
MAPLEWOOD, NJ 07040-0398
www.appmi.com

AGLC 100566-NJ

0529

# EXHIBIT C

830 Third Avenue, 7th Floor
New York NY 10022 6565
212 709 6000

## THE UNITED STATES LIFE Insurance Company

### POLICY DELIVERY RECEIPT

Contract/Certificate Number: _____ UH062220NL _____

Owner: _____ MARIA C PENA _____

My life or annuity contract/certificate has been delivered to me.

Date: _8-/7/804_

Owner Signature: X maria Rena Corcino

**IMPORTANT NOTICE:** The laws of your state may require the completed Policy Delivery Receipt be returned to the Insurance Company.

000000657

# EXHIBIT D



# THE UNITED STATES LIFE INSURANCE COMPANY
# IN THE CITY OF NEW YORK

### AMENDMENT OF APPLICATION
### Contract Acceptance Acknowledgement

Insured:            Maria C. Pena
Contract Number:    UH062220NL

I hereby acknowledge receipt and acceptance of the Contract described above. I also accept all matters set forth in the Contract which was issued that differ from the Contract for which application was made. Those differences which I hereby accept are as follows:

Policy issued with contingent beneficiaries as follows:

Freddy Antonio Gomez, step-brother – 14%
Gladie Gomez, step-sister – 14%
Claudio Gomez, step-brother – 14%
Juan Gomez, step-brother – 14%
Delby Gomez, step-brother – 14%
Junior Gomez, step-brother – 14%
Luis M. Pena, husband – 16%

I hereby represent that I have read and understand the statement(s) made above. I agree that this Acknowledgement will be made a part of the Contract. I understand that if any statement above is not true, I should not sign this form. Instead, I should have the Contract returned to the Company with full details for further consideration.

Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

Dated this _____7th_____ day of __August_____, 20 _04____

_____          X Maria Pena Corano
Witness                          Owner

_____          _____
Witness                          Joint Owner (if applicable)

USL146-01A-31                                          000000658

# EXHIBIT E

APR-15-2005 02:59 AM     P.02

FROM : JNESO     PHONE NO. : 7327452776     Apr. 14 2005 09:14PM P4

 **AMERICAN GENERAL**

**Proof of Death**
**Claimant's Statement**

**American General Life Insurance Company**
A member company of American International Group, Inc.
Service Center: P.O. Box 4443 • Houston, TX 77210-4443

To Be Completed By The Beneficiary

DECEASED FULL NAME (include maiden name) — List other instructions, nicknames, and any other full names used by deceased in the past

*Maria Coreno Pena*    Trauma    DATE OF DEATH *02-04-2005*

DATE OF BIRTH *11-18-1967*    CAUSE OF DEATH *Politrauma. severe General*

POLICIES DECLARED HELD WITH THIS COMPANY:

POLICY NUMBER *U4067220NL*    AMOUNT OF INSURANCE    POLICY NUMBER    AMOUNT OF INSURANCE

I hereby certify that the policy of insurance for the listed policy is ☐ ENCLOSED ☐ LOST ☐ DESTROYED

CLAIMANT'S NAME *Francisco Jime Estrella*    DATE OF BIRTH *12-09-45*    RELATIONSHIP TO DECEASED *stepfather*

ADDRESS *Mansei?*    CITY *La Vega*    STATE *R.D.*    ZIP    PHONE NO. *(809)573-9634*

Have you given the Funeral Home an Assignment to collect any amount due under this claim? ☐ YES ☐ NO    If yes, what amount? $ _____ (Attach copy of Assignment)

How do you want proceeds paid? ☐ Lump ☐ Sum

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

PLEASE SIGN HERE *Ss · J E*

CLAIMANT'S S.S. NO. *Don't ei S.S.P.*   OR   THE T.I. NO. *Don't have tax id no*

CLAIMANT'S SIGNATURE *Ss · J · E*    DATE *14-04-2005*

WHERE SHOULD ANY CHECK OR CORRESPONDENCE BE MAILED? SHOW BELOW

*Calle Juan Rodriguez esquina Colón Plaza Jimenez modelo 218, segunda plata la Vega.*

Page 1 of 2

000000534

FROM : JNESO                    PHONE NO. : 7327452776           Apr. 14 2005 09:16AM P7

    **AMERICAN GENERAL**                    **HIPAA Authorization - Claims**

HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT ("HIPAA")
Authorization to Obtain and Disclose Information

Maria C. Pena                              11 / 18 / 1962
Name of Patient/Insured (Please Print)                    Date of Birth

I hereby authorize all of the people and organizations listed below to give AIG Life Insurance Company, AIG Life Insurance Company of Puerto Rico, American General Life Insurance Company, American Home Assurance Company, Delaware American Life Insurance Company, Pacific Union Assurance Company, and the American General Life Companies, (an affiliated service company), (collectively the "Companies"), and their authorized representatives, including agents and insurance support organizations, (collectively, the "Recipient"), the following information:

- any and all information relating to _Maria C. Pena_ health (except psychotherapy notes)
Name of Patient/Insured

and his/her insurance policies and claims, including, but not limited to, information relating to any medical consultations, treatments, or surgeries; hospital confinements for physical and mental conditions; use of drugs or alcohol; and communicable diseases including HIV or AIDS.

I hereby authorize each of the following entities to provide the information outlined above:

- any physician or medical practitioner;
- any hospital, clinic or other health care facility;
- any insurance or reinsurance company (including the Recipient for purposes of disclosing information related to other insurance policies that provide me with insurance coverage);
- any consumer reporting agency or insurance support organization;
- his/her employer, group policy holder, or benefit plan administrator; and
- the Medical Information Bureau (MIB).

I understand that the information obtained will be used by the Recipient to:

- determine his/her eligibility for benefits under and/or the contestability of an insurance policy.

I hereby acknowledge that the insurance companies listed above are subject to federal privacy regulations. I understand that information released to the Recipient will be used and disclosed as described in the AIG American General Notice of Health Information Privacy Practices, but that upon disclosure to any person or organization that is not a health plan or health care provider, the information may no longer be protected by federal privacy regulations.

I may revoke this authorization at any time, except to the extent that action has been taken in reliance on this authorization or other law allows the Recipient to contest a claim under the policy or to contest the policy itself, by sending a written request to: AIG American General Service Center, P.O. Box 4373, Houston, TX 77210-4373. I understand that his/her revocation of this authorization will not affect uses and disclosures of his/her health information by the Recipient for purposes of claims administration and other matters associated with his/her claim for benefits under insurance coverage and the administration of any such policy.

I understand that the signing of this authorization is voluntary; however, if I do not sign the authorization, the Companies may not be able to obtain the medical information necessary to consider his/her claim for benefits.

This authorization will be valid for 24 months or the duration of any claim for benefits under his/her insurance coverage, whichever is later. A copy of this authorization will be as valid as the original. I understand that I am entitled to receive a copy of this authorization.

_[signature]_                              14 - 04 - 2005
Signature of Next of Kin or                    Date
Insured's Personal Representative

000000535